## Crawford's Appeal

HARVEY, P. J., eighteenth judicial district, specially presiding, August 13, 1932.—C. J. Crawford, a resident of Franklin, Venango County, Pa., executor of the estate of John P. Crawford, deceased, returned to the commissioners' office of said Venango County a certain mortgage belonging to said estate for tax purposes under the Act of May 2, 1929, P. L. 1509. He placed a valuation thereon of $1000. The mortgage, recorded in Butler County, Pa., in which county the land held under said mortgage is located, was certified from the records by the Recorder of Butler County to the commissioners' office of Venango County, Pa., in the sum of $10,771.05 for taxation purposes. The Commissioners of Venango County aforesaid increased the assessment of said mortgage upon the return of Mr. Crawford for the year 1932 by the sum of $9771, making a total assessment therefor of $10,771. Mr. Crawford appealed from the action of the county commissioners in the matter to this court. It is that appeal we now consider.

A hearing upon said appeal was fixed for and held May 4, 1932, and continued May 5, 1932. A stenographic record was made of the evidence and testimony presented at said hearing, a typewritten transcript thereof made and filed with the records of the case and made part thereof.

From the evidence and testimony presented at the hearing we find:

1. C. J. Crawford, appellant, as executor of his father's, John P. Crawford's, estate in the year 1921 sold to W. J. James four several tracts of land in Allegheny Township, Butler County, Pa., belonging to the John P. Crawford Estate, containing 52 acres, more or less, 150 acres, more or less, 110 acres, more or less, and 70 acres, more or less.

2. In part consideration for said land he took a purchase money mortgage, with bond accompanying, of W. J. James in the sum of $10,771.05, which mortgage was recorded in Butler County records in Mortgage Book No. 170, page 123.

3. No part or portion of the principal of said mortgage was ever paid.

4. The interest upon said mortgage was paid to 1925, since which time it has been in default.

5. The lien of the mortgage upon the tract containing about 110 acres was released by Mr. Crawford about the year 1925. No consideration was received for release.

6. None of the three remaining tracts bound by the mortgage is "improved," but they are rough uncultivated lands, covered mostly with scrubby second-growth trees of little or no market value unless it be for "pit posts," which are short posts of relatively small diameter used to support overhead stratum in coal mines and acceptable if of trees of almost any hardwood character. The price of said posts is dependent upon the demand for them and, in the depressed condition of the bituminous coal business, there is little or no demand for such posts at the present time.

7. Taxes have remained unpaid upon said three tracts of land bound by the mortgage since and including the year 1927 (except those for 1928; which were paid by C. J. Crawford), amounting to $823.49.

8. The value of the three tracts of land bound by the mortgage is variously testified at from $5 to $7 per acre.

9. The lands were bought by W. J. James for the minerals supposed to be in and under the same, especially a vein of bituminous coal known as the "Bear Creek" vein, of a thickness of from 4 feet to 4 feet 6 inches, lying about one hundred and seventy-five feet below the surface of the said lands.

10. The nearest point of shipment of the coal to market, provided it would be feasible to mine it at all, is from four to six miles, through, over or across the lands of other persons.

11. The tests for oil upon or in the vicinity of the three tracts of land in Butler County bound by the lien of the mortgage, while not conclusive, discourages the prospects for oil upon the mortgaged lands to the extent that they lend no added value to the lands on that score.

12. W. J. James is insolvent.

13. No benefit or value would accrue to the mortgagee by the entry for judgment of the bond accompanying the mortgage.

14. The three tracts of land in Allegheny Township, Butler County, Pa., bound by the mortgage are the sole and only factor of value in and to the W. J. James mortgage aforesaid.

15. The appeal in this matter was taken within sixty days after final decision of the board of county commissioners refusing the valuation of the W. J. James mortgage as returned by C. J. Crawford in his personal property return for the year 1932.

## Discussion

Diligent search has failed to discover an adjudged case reported similar to this. No provision appears in the original Act of June 17, 1913, P. L. 507, or in its amendments, for an appeal from the decision on tax assessments of the county commissioners or a board of revision. While no question has been raised in the case as to the right to an appeal, the Act of April 19, 1889, P. L. 37, confers on the property owner the right to appeal to the court of common pleas: Philadelphia v. Kolb, 288 Pa. 359.

It is well established that when proceedings on appeals on tax assessment valuations come into court they are considered de novo, and a prima facie case is made out on behalf of the county commissioners or board of revision in introducing in evidence the assessment books together with the record data relating to the valuation appealed from. The county commissioners quite properly in this case took the certified record of this mortgage from Butler County and used it in making up Mr. Crawford's corrected return for the personal property tax under the Act of May 2, 1929, P. L. 1509: in fact not to have done so without an affidavit or certificate satisfactory to them as to the present worth or value of the mortgage as security for a debt upon which the tax under the act supra shall be paid would be a plain dereliction of duty and render them subject to a

fine. The county commissioners present their side of the case by introducing in evidence the record data relative to the W. J. James mortgage, thus making out a prima facie case. It is contended on behalf of the county commissioners that under the wording of the act "all mortgages" shall be returned and the tax collectible upon such return; if the return does not coincide with the record data the return shall be corrected to agree with the record data and the tax collected thereupon. On behalf of the appellant it is urged that it is the actual worth or value of the mortgage which should be returned and the tax paid thereon. With this contention we agree, and it was for the purpose of ascertaining that worth or value that we entertained the appeal and held the hearing.

After careful reading and consideration of the original Act of June 17, 1913, P. L. 507, and its amendments, we conclude that the central factor or basis for valuations for taxation purposes is the value of the personal property liable to taxation as set out in the first paragraph of section one of the Act of 1929, supra, viz., "is hereby made taxable, annually . . . at the rate of four mills on each dollar of the value thereof," the second paragraph of said section one simply setting out the various subjects of taxation, among which is enumerated "mortgages." The mortgage of W. J. James in the instant case is accompanied by a bond. We believe that if this bond were entered of record and by so doing it enhanced the value of the mortgage, the mortgage should be returned for taxation purposes at whatever value the mortgage and bond accompanying it possessed: Section eighty-nine of the act. In our opinion the intent under the act is to reach the interest-bearing debt, however secured, subject to taxation through the various obligations and channels enumerated in the act, and this "taxable debt" is equivalent to the "value" of the security pledged therefor, be it a mortgage, obligation in a bond accompanying the mortgage, the personal worth of the maker, assignee, or otherwise. Concretely, in the W. J. James mortgage the debt presumed to be secured thereby is $10,771.05. If the mortgaged property, other property under a lien through the accompanying bond, and/or the personal worth of W. J. James, singly or together, secured the debt, then this mortgage should be returned for taxation purposes at its full face value. If, however, the mortgaged property, other property which might be secured by a lien under the bond accompanying the mortgage, and/or the personal worth of W. J. James, would not secure in full the debt for which the mortgage was given as security, then the actual worth of the several factors from which value might be secured would represent the value of the mortgage, and that value would be the amount returned under the act for taxation purposes. In the instant case it is testified that W. J. James is personally insolvent; that nothing could or would be gained or secured by entering judgment upon the bond accompanying the mortgage in any of the several counties wherein W. J. James at one time owned property, thus leaving the property bound by the mortgage in Allegheny Township, Butler County, Pa., the sole source of value upon the mortgage in question. We have found that W. J. James is personally insolvent and that no value would accrue by entering the bond accompanying the mortgage; therefore, the value of the lands in Allegheny Township, Butler County, Pa., bound by the lien of the mortgage, represents the "value" of the mortgage and is the amount which may properly be returned for taxation purposes under the Act of May 2, 1929, P. L. 1509. The acreage of the three tracts of land bound by the lien of the mortgage is testified by Mr. Crawford in "round numbers" to be "52-150-70" acres, or a total of 272 acres. Again, Mr. Crawford testifies as to there being 288 acres bound by the mortgage. Allowing the highest acreage at the highest price per acre testified would bring a total value of $2016, against which are unpaid taxes amounting to

$823.49, leaving a net worth of $1192.51. Mr. Crawford's estimate at $5 per acre, less taxes, would leave a net worth of the land of $616.51.

We feel that Mr. Crawford's valuation of the W. J. James mortgage in question, put in his return for taxation for the year 1932 at $1000, under the Act of May 2, 1929, P. L. 1509, is a fair, reasonable and proper valuation for the purposes under the act. We so hold.

And now, August 13, 1932, after hearing, upon due consideration, the rule granted April 20, 1932, is made absolute and the prayer in petition is granted, and the amount of $1000 as the value of the W. J. James mortgage returned for the year 1932 by C. J. Crawford, executor of the estate of John P. Crawford, deceased, is fixed and so ordered as the proper valuation assessment for taxation under the Act of May 2, 1929, P. L. 1509.