Dunbar Appeal.

Argued May 5, 1971. Before Bell, C. J., Eagen, O'Brien, Roberts, Pomeroy and Barbieri, JJ.

reargument refused February 1, 1972.

*J. Jackson Eaton, III,* with him *Robert G. Tallman,* and *Butz, Hudders & Tallman,* for appellant.

*Donald L. LaBarre,* Assistant County Solicitor, for appellee.

Opinion by Mr. Justice Roberts, December 29, 1971:

This is an appeal from an order of the Court of Common Pleas of Lehigh County affirming the decision of that county's Board of Assessment and Tax Revision

regarding the assessment and taxation of certain personal property owned by appellant, Spurgeon Dunbar. For reasons hereinafter set forth, we vacate the order of the Common Pleas Court and remand the case to the Board of Assessment and Tax Revision for further proceedings consistent with this opinion.

Appellant is in the business of selling low-cost housing in Lehigh County to low income individuals. The financing is accomplished through the method of articles of agreement for the sale of real estate. Using his own credit, Dunbar mortgages the property prior to the agreement of sale. A person wishing to purchase one of these homes enters into an agreement of sale by which he agrees to pay Dunbar a monthly amount which includes a payment of the principal price plus an interest payment. As payments are made by the buyer, the mortgage is paid off and title passes at the end of such payments.

By a letter dated August 8, 1969, the County of Lehigh notified Dunbar that he was being assessed $48,-023.38 in taxes, penalty and interest for unpaid taxes due upon these agreements of sale, pursuant to the Act of June 17, 1913, P. L. 507, *as amended*, 72 P.S. §4821, commonly known as the Personal Property Tax Act. The Act empowers counties to levy a tax at the rate of four mills of each dollar of the value of designated personal property. The tax in the instant case was levied on the face value (sale price less principal paid) of the articles of agreement. It is the county's position that such taxes are due and owing for the years 1964 through 1968.

Appellant filed a petition for reassessment with the Board of Assessment and Tax Revision. After argument, the Board entered a decision denying all relief requested in the petition.

Appellant then appealed to the Court of Common Pleas of Lehigh County, which subsequently affirmed the decision of the Board. This appeal followed.

Three basic questions are presented for our determination:

I. Does the Act of April 4, 1868, P. L. 61, *as amended,* 72 P.S. §4731, exempt appellant's agreements of sale from the Personal Property Tax Act;[1] if appellant is not so exempted, we must also decide:

II. Does the five-year statute of limitations for assessments contained in the Personal Property Tax Act begin to run on the date that the taxpayer is required to file his return or on December 31st of the year for which the tax is imposed; and

III. Does the Personal Property Tax Act require that appellant's agreements of sale be taxed at their face value (sale price less principal paid) or at their fair market value?

I.

It is appellant's contention that Lehigh County is precluded by the terms of the Act of April 4, 1868, P. L. 61, 72 P.S. §4731 (hereinafter referred to as Act of 1868), from levying a personal property tax on agreements of sale held by private individuals.[2]

---

[1] Act of June 17, 1913, P. L. 507, *as amended,* 72 P.S. §4821.

[2] 72 P.S. §4731 (entitled "Mortgages, judgments, etc., to be exempt from local taxation, in certain counties") provides the following: "All mortgages, judgments, recognizances and moneys owing upon articles of agreement for the sale of real estate made and executed after the passage of this act, shall be exempt from all taxation except for state purposes; and from and after the first day of December next no taxes of any description shall be assessed or collected except for state purposes, on or from mortgages, judgments, recognizances or moneys owing upon articles of agreement for the sale of real estate, whether made and executed before or after the passage of this act: Provided, That nothing in this act

While it is true that the Act of 1868 has never been explicitly repealed, the historical note which follows it in Purdon's strongly suggests that implied repeal has taken place: "Counties, without exception, now tax mortgages, judgments, etc., contrary to the provisions of this section. It has been suggested that this section is impliedly repealed by act 1913, June 17, P. L. 507 (incorporated in this title). The species of property named in this section were subject to taxation for local as well as state purposes by section 32 of the act of 1844, April 29, P. L. 486 (section 4781 of this title). For the present act taxing such property, see section 4821 of this title."

In determining whether a prior act is repealed by implication, courts of this Commonwealth have formulated the following test to aid them in arriving at the intent of the legislature: "It will be presumed that the legislature, in enacting a statute, acted with full knowledge of existing statutes relating to the same subject; and where express terms of repeal are not used, the presumption is always against an intention to repeal an earlier statute, unless there is such inconsistency or repugnancy between the statutes as to preclude the presumption, or the later statute revises the whole subject matter of the former. To establish a repeal by

---

shall be construed to apply to mortgages, judgments or articles of agreement given by corporations: Providing, That this act shall only apply to the counties of Berks, Schuylkill, Luzerne, Clearfield, Allegheny, York, Delaware, Montgomery, Chester, Lancaster, Huntingdon, Fulton, Bedford, Blair, Lebanon, Clinton, Carbon, Monroe, *Lehigh*, Mifflin, Westmoreland, Northampton, Juniata, Somerset, Indiana, Greene, Elk, Forest, Franklin, Perry, Cumberland, Dauphin, Lawrence, Lycoming, Union, Snyder, Erie, Crawford, Bucks, McKean, Fayette, Philadelphia, and Mercer." (Emphasis added). At various times between 1869 and 1871 the act was extended to Susquehanna, Armstrong, Washington, Venango, Adams, Beaver, Montour, Pike, Centre and Wayne Counties, thus applying to a total of fifty-three of the sixty-seven counties.

implication there must be a clear and strong inconsistency between the acts." *Kingston Borough v. Kalanosky*, 155 Pa. Superior Ct. 424, 427-28, 38 A. 2d 393 (1944) (citations omitted). Further, it is a statutorily mandated canon of construction that: "Whenever the provisions of two or more laws passed at different sessions of the Legislature are irreconcilable, the law latest in date of final enactment shall prevail." Act of May 28, 1937, P. L. 1019, Art. IV, §66, 46 P.S. §566.

Appellant urges upon this Court that the Personal Property Tax Act, a general revenue statute,[3] does not impliedly repeal the Act of 1868, a specific statute aimed at encouraging the development of real estate by private citizens (*see Delaware County v. Thomas*, 1 Del. Co. 197 (1882)) since the two provisions do not speak to the same subject matter.

There is little logic in such a position here. As this Court noted with approval in *Bosack v. Schuylkill County*, 311 Pa. 157, 159, 160, 165 Atl. 393, 394 (1933): " 'There is no rule which prohibits the repeal of a special act by a general one, the question being always one of intention. It is unquestionably true that where the provisions of a general and of a local or special act are so irreconcilably conflicting that both cannot be given effect, the inconsistent provisions of the earlier local or special act are repealed by implication. . . . An intent to repeal the inconsistent provisions of the

---

[3] The Personal Property Tax Act provides in pertinent part: "All personal property of the classes hereinafter enumerated, owned, held or possessed by any resident . . . is hereby made taxable annually for county purposes, and, in cities coextensive with counties, for city and county purposes, at the rate of four mills of each dollar of the value thereof. . . ." The enumerated personal property includes: "All mortgages; all moneys owing by solvent debtors . . . *all articles of agreement* and accounts bearing interest. . . ." (Emphasis added). Act of June 17, 1913, P. L. 507, *as amended*, 72 P.S. §4821.

earlier special act may be inferred from the fact that the provisions of the two acts are so glaringly repugnant to and so radically irreconcilable with each other as to render it impossible for both to stand. . . .' "

We feel that it would be unreasonable to confine the broad sweep of the Personal Property Tax Act to those fourteen counties, containing but a fraction of the state's population, not named in the Act of 1868. A much more plausible interpretation is that it was the intention of the Legislature in enacting this broad revenue measure to give *all counties* the right to so tax the enumerated personal property. Since such a construction is radically inconsistent with the Act of 1868, we hold that the last mentioned act was impliedly repealed. Therefore, appellant's agreements of sale are not exempted from the Personal Property Tax Act.

In the alternative, appellant asks to be excused from the penalty imposed by 72 P.S. §4844 for failure to file a return because of the ambiguity of the implied repeal.[4]

--------

[4] 72 P.S. §4844 provides in pertinent part: "If any taxable resident shall fail to file a return, or fail to include in any return all of his property made taxable by this act, or shall file a return which is false, incomplete, incorrect or inaccurate, the board of revision of taxes, or the county commissioners, shall make an assessment of the tax against such resident of the amount of tax for which such resident is liable, or for which he is believed by the board of revision, or county commissioners, to be liable, to which estimated return the board of revision of taxes, or county commissioners, *shall add twelve per cent* and the aggregate amount so obtained shall be the basis for taxation. . . .

". . . If such resident is dissatisfied with the assessment so made, he may, on or before the day fixed for appeals from assessments, present reasons, supported by oath or affirmation, for his failure to file a return to include all of his taxable property therein; or for having made a return which was incomplete, incorrect or inaccurate, and *the board of revision of taxes*, or the county commissioners, as the case may be, *may, if satisfied with the ex-*

We agree with appellant that the board of assessment has the power to excuse a taxpayer from the penalty of twelve percent of the taxpayer's basis permitted by 72 P.S. §4844. That section makes it clear that the Board is required to include the twelve percent penalty in the initial computation of a delinquent taxpayer's basis for assessment, but that the Board "if it is satisfied with the [taxpayer's] excuse" has the discretion to "relieve the taxpayer from a payment of the twelve per cent penalty," except "where a false return has been filed by the taxpayer."

Here, the taxpayer asserts as an excuse for his delinquency his reliance upon the statute which has not until this day been declared to have been repealed. The Board, if they accept the excuse as a true and honest one, has the discretionary power to exempt this taxpayer from the twelve percent assessment penalty for the tax years in question. Since this determination is for the taxing authorities in the first instance, the board of assessment should consider appellant's request for excuse on remand.

## II.

Appellant's second contention is that the five-year statute of limitations contained in the Personal Property Tax Act prevents the county from assessing ap-

---

*cuse* so presented, *permit the taxpayer to file his own return and substitute said return for the estimated return made by the board of revision of taxes or the county commissioners.* In all cases *where a false return has been filed by the taxpayer, the board of revision of taxes or the county commissioners, may not relieve the taxpayer from the payment of the twelve per cent penalty,* but the estimated return shall be final, except in those cases in which a true and correct return shall reveal a higher assessed value than that contained in the estimated return, in which case the tax and penalty shall be based upon the true valuation." (Emphasis added.)

pellant for the tax due on his agreements of sale for the year 1964. Since the county did not seek to assess appellant for the year 1964 until August 8, 1969, we agree with appellant.

The limitation of five years is spelled out in Section 5 of the Personal Property Tax Act:[5] "An assessment, as herein provided, may be made by the board of revision of taxes, or the county commissioners, at any time within five years after any property owned, held or possessed, or alleged to have been so owned, held or possessed, by any resident *should have been returned by him for taxation* . . . ." (Emphasis added.)

So the simple question is: when *should* the taxpayer have returned the property for taxation? The answer is found in Section 4.1(a) of the Personal Property Tax Act:[6] "(a) For the purpose of ascertaining the amount of tax payable under this act, it shall be the duty of every resident liable to pay such tax on or before the *fifteenth day of February* of each year to transmit to the board for the the revision of taxes, or the county commissioners, upon a form prescribed, prepared and furnished by the board of revision of taxes, or the county commissioners, *a return* certified as provided in this act . . . ." (Emphasis added.)

These provisions make it clear that the nonaction which starts the running of the statute of limitations is the failure to file a return when it is due, and not, as appellees contend, a tax payment delinquency. Therefore, after February 15, 1969, the county was barred from assessing appellant for the year 1964.

### III.

Finally, we must determine whether the Personal Property Tax Act requires that appellant's agreements

---

[5] 72 P.S. §4844.

[6] 72 P.S. §4843.1(a).

of sale be taxed at their face value (sale price less principal paid) or at their fair market value.

The Personal Property Tax Act imposes a tax of "four mills of each dollar of the value thereof . . ." on "[a]ll mortgages; *all moneys owing by solvent debtors,* whether by promisory note, or penal or single bill, bond, or judgment; *all articles of agreement* and accounts bearing interest . . . ."[7] The express statutory language [imposing a tax on "all moneys owing by solvent debtors"] indicates a clear legislative plan to tax the *amount of debt* evidenced by an agreement or instrument. See *Crawford's Appeal,* 19 Pa. D. & C. 147, 149 (C.P. Venango County). It is that value of the debt—the face amount of the agreement or instrument less principal paid—which is made the basis for the imposition of the applicable tax rate.

The legislative intent to base the tax on the face value of the debt less principal paid is further supported by other provisions in the act. It is ". . . the duty of the recorder of deeds, mortgages . . . to keep a daily record . . . of every mortgage or article of agreement given to secure the payment of money entered in his office for recording, which said record shall set forth . . . the number of mortgages and agreements, together with *the amount of same* . . . and it shall be the further duty of the recorder, on the first Monday of each month, to file the aforesaid daily record in the commissioner's office, or with the board of revision of taxes . . . ." Act of June 17, 1913, P. L. 507, §7, 72 P.S. §4861. Furthermore, "[i]t shall be the duty of the assessor or assessors, in making up their valuations of money at interest . . . *to compare the return made by each person . . . with the statement furnished them* by the county commissioners or board of revi-

---

[7] Act of June 17, 1913, P. L. 507, §1, as amended, 72 P.S. §4821.

sion of taxes; *and if the amount of said mortgages or other obligations,* as contained in said statement, shall exceed the amount set forth in the return of any person . . . to note the fact *and make return of the same* to the commissioners or board of revision of taxes of the proper county or city." Id. §11, 72 P.S. §4865 (emphasis added).

The above provisions make it clear that the Legislature intended instruments of indebtedness to be assessed at their face value. Section 4861 requires the recorder of deeds to make available to the county commissioners or the board of revision of taxes *the face values* of mortgages and agreements. Section 4865 compels the tax assessors to compare the tax returns with the recorded *face amounts* of "mortgages or other obligations." The requirement of these statutory duties would be meaningless if the Legislature intended a standard other than *the face amount* of the debt to be used in the assessment process.

To adopt a fair market value standard of valuation would fly in the face of long standing precedent. This Court has long recognized that "[*i*]*ndividual mortgages, money in the hands of solvent debtors,* etc., are ordinarily—indeed, we think universally—*valued at their face.* The actual value of an individual mortgage, or of an obligation for money in the hands of a solvent debtor, *is presumptively its face value. If the mortgage is bad, or the obligor is not solvent, the debt is not taxable*; if, on the contrary, they are good, the common experience of business men is that the *face value is the actual value ascertained in the ordinary modes of assessment.*" *Commonwealth v. Delaware Div. Canal Co.,* 123 Pa. 594, 624-25 (1889), aff'd sub nom., *Bell's Gap Railroad Co. v. Pennsylvania,* 134 U.S. 232, 10 S. Ct. 533 (1890) (emphasis added); ac-

cord *Perry County v. Troutman,* 144 Pa. 361, 364 (1891) (per curiam).[8]

In addition, adoption of a fair market value standard of valuation would subject a long established assessment process to administrative chaos. As the trial court aptly observed: "We agree with the Board, however, in its position that market value is an intangible valuation which is subject to differences of opinion by various experts considering it. The case before us involves approximately 450 agreements for the 1968 tax year. The appellant demands an evaluation of each agreement based upon such illusive matters as the interest rates in the agreement in a high interest rate market, the physical condition of the various properties, the financial credit of the purchasers, and the cost of servicing the agreements. We agree with the Board's contention that the practical application of the appellant's principle would present a chaotic situation to the various County Boards of Tax Revision and Appeals." *In Re: Petition of Spurgeon D. Dunbar,* 34 Lehigh L.J. 20, 24-25 (C.P. Lehigh County 1970).

This Court recently recognized the administrative chaos which would accompany the use of "blockage" in assessing the "actual value" of large holdings of listed securities for the purposes of the personal property tax. *McNeil Tax Assessment Case,* 435 Pa. 553, 257 A. 2d 835 (1969). We declared that "imponderables too numerous to contemplate would be introduced into the assessment process." Id. at 557, 257 A. 2d at

---

[8] In *Troutman* this Court was interpreting the Act of June 1, 1889, P. L. 420 (repealed) and has since held that similar language in the 1889 act and the Act of June 17, 1913, P. L. 507 are presumptively construed to have the same meaning. *Buhl's Estate,* 300 Pa. 29, 32, 150 Atl. 86, 87 (1930). Both statutes imposed taxes on similar classes of property to the extent of every "dollar of value thereof." Compare Act of June 17, 1913, P. L. 507, §1, as amended, 72 P.S. §4821 with Act of June 1, 1889, P. L. 420, §1 (repealed).

837. The use of fair market value instead of the face value of the instrument of indebtedness would magnify many times the complexities and "imponderable" this Court sought to avoid in *McNeil*.

The order of the Court of Common Pleas of Lehigh County is vacated and the case is remanded to the Board of Assessment and Tax Revision for further proceedings consistent with this opinion.

Mr. Justice JONES took no part in the consideration or decision of this case.

---

DISSENTING OPINION BY MR. JUSTICE EAGEN:

While I wholeheartedly endorse the conclusion that appellant Dunbar is not exempt from payment of the instant tax, I do not agree with the Court's determination with respect to the proper valuation of this property.

Like the majority I have plumbed the statute to determine the meaning of the word "value" which is used without accompanying definition in 72 P.S. §4821.[1] My soundings, however, indicate that it was the intention of the legislature to tax these agreements at their real or market value.

Mr. Justice FRANKFURTER best summarized the task at hand when he wrote, "Statutes come out of the past and aim at the future. They may carry implicit residues or mere hints of purpose. Perhaps the most delicate aspect of statutory construction is not to find more residues than are implicit nor purposes beyond the bound of hints." FRANKFURTER, *Some Reflections on the Reading of Statutes*, 47 Colum. L. Rev. 527, 535.

---

[1] "All personal property of the classes hereinafter enumerated . . . is hereby made taxable annually for county purposes . . . at the rate of four mills of each dollar of the *value* thereof. . . ." (Emphasis supplied) Act of June 17, 1913, P. L. 507, §1, *as amended*, 72 P.S. §4821.

One such hint of purpose is found in Section 17 of the original Act which made scrip, bonds and certificates of indebtedness issued by private corporations taxable for state purposes "at the rate of four mills on each dollar of the *nominal value* thereof. . . ." (Emphasis supplied) Act of June 17, 1913, P. L. 507, §17.

Thus it is apparent that the legislature was capable of and did distinguish between "value" and "nominal value" in the various sections of the statute as originally enacted. *See, also,* 1 Pa. Taxes, CCH, §24-031.

Reinforcing an interpretation of "value" in the context of this statute to mean real or market value is the command of 72 P.S. §4843.1(a)(1) which states in part: "For the purpose of ascertaining the amount of tax payable under this act, it shall be the duty of every resident . . . to transmit to . . . the county commissioners . . . the aggregate actual value of each part of the different classes of property made taxable by this act . . . possessed by such resident. . . ."

As was aptly pointed out by counsel for appellant, it would be useless to require a return of property at actual value and a taxation at face value.[2]

Moreover, this Court has on one occasion in the past in *Commonwealth v. Lehigh Valley R. Co.,* 104 Pa. 89 (1883), considered the exact language which now troubles us in a very similar personal property tax statute. Involved was the Act of June 7, 1879, P. L. 112, §17, and the supplementary Act of June 10, 1881, which declared that mortgages, etc., "shall be and hereby are made taxable at the rate of four mills on every dollar of the value, thereof." Unlike the instant case, the property tax was being levied for state as opposed to county purposes. There the Court said, at pp. 100, 101:

---

[2] That is, of course, unless the situation is one in which the actual value and the nominal or face value are identical.

"The phrase, 'every dollar of the value thereof,' has acquired a well established signification under our revenue system; it means simply the actual value, or worth.

. . .

"The Legislature has thus frequently defined the phrase 'every dollar of the value thereof' to signifying actual value, and the construction which is deducible from the continued, general and uniform practice and understanding throughout the Commonwealth, is the same."

The majority assert that adoption of a real or market value standard of valuation would fly in the face of long-standing precedent and direct our attention to certain language in *Commonwealth v. Delaware Division Canal Co.*, 123 Pa. 594 (1889). Removed from the context and fabric of the case, the language concededly supports the majority's view. But whether that case is dispositive of the present issue of valuation is best answered by noting that the tax under consideration there was imposed by explicit legislative directive "upon the nominal value" of corporate loans. The court there did nothing more than to declare the levy on the nominal value of the property a constitutionally permissible classification.

Nor do I believe that the *McNeil Tax Assessment Case*, 435 Pa. 553, 557, 257 A. 2d 835 (1969), advances the majority's view on the question of valuation. Although this Court refused there to sanction the use of blockage, the actual or market value of the stock, as determined by the closing market price, was used for assessment purposes. Hence, *McNeil* cannot be made to serve the wider purpose of obstructing the use of real or market value as a measure of the tax in the instant case.

This is not to say that I would have the Board take into consideration all of the factors which Dunbar asserts affect such market value.

No consideration should be given to the number of agreements which Dunbar holds and the possible effect of disposing of all of them at one time. This is an undisguised attempt to invoke the blockage principle and is precluded by the *McNeil* decision.[3] Nor should the credit of the obligors, a most nebulous concept when one considers that Dunbar is in the business of providing low cost housing to low income individuals, be taken into account unless exceptional circumstances can be shown. As long as an individual is solvent and paying on the agreement, this factor should not be added to the scales. It would admittedly be relevant in cases where the debtor is insolvent.

On the other hand, outstanding mortgages would affect the value of these agreements since the agreement holder is responsible for payment of the same. Likewise, it seems reasonable that the cost of servicing these agreements would be a factor which a willing buyer would take into consideration in the formulation of his offering price and hence should be a factor in an assessment.

It was also argued that many of the instruments of agreement were executed at a time when the interest rate prevailing in the money market was lower. Consequently, in order to achieve what is presently considered a reasonable yield on an investment, the prices paid for such instruments would necessarily be lower than face value in order to increase the yield to the instrument's purchaser. If such could be proven by expert financial testimony, it would be pertinent to a determination of market value.

Mr. Justice POMEROY joins in this dissent.

---

[3] I filed a dissenting opinion in *McNeil* and stand by the views expressed therein.