United Utilities, Inc. Stockholders Tax Appeals.

Argued October 30, 1972, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Richard B. Kirkpatrick,* with him *Lee A. Montgomery* and *Galbreath, Braham, Gregg, Kirkpatrick, Jaffe & Montgomery,* for appellants, Kirkpatrick and Amy.

*William C. Robinson,* with him *Henninger & Robinson,* for appellants, Estates of Henninger and Ritts.

*Lee C. McCandless,* County Solicitor, for appellee.

OPINION BY JUDGE MENCER, December 21, 1972:

We have for our consideration four appeals involving assessments of taxes by the Butler County Commissioners relative to the ownership by the appellants of stock of United Utilities, Inc. (United).

On September 13, 1966, the Peoples Telephone Company of Butler (Peoples) merged with United, and the stockholders of Peoples received stock of United in exchange for their stock of Peoples. At the time of the merger, United applied for and was granted a certificate of authority to do business in the Commonwealth of Pennsylvania. Thereafter, six widely distributed tax services[1] listed United for the years 1967, 1968 and 1969 as not subject to the four-mill personal property tax imposed by the Act of June 17, 1913, P. L. 507, §1, as amended, 72 P.S. §4821.

The facts relating to the filing of the personal property tax returns for the stock in question and the action of the tax bureau were undisputed and were fairly summarized by the lower court as follows:

"1. The Amy returns filed for the years 1967, 1968 and 1969 simply reported 2201 shares. The bureau marked the stock exempt. The taxpayer did not include the United Utilities, Inc. stock in the aggregate actual value of his taxable property. Nor did the clerk of the tax bureau that completed the returns for the taxpayer.

---

[1] United's stock was shown as exempt in the tax services published by Commerce Clearing House, Union National Bank, Standard & Poor's, Moody's Investors, Singer, Deane & Scribner, and Prentice-Hall.

"2. The Kirkpatrick returns filed for the years 1968 and 1969 reported ownership but not the number of shares. The bureau marked the stock exempt. The aggregate actual value of the taxable property was not reported in the returns.

"3. The Henninger return for 1967 reported ownership but not the number of shares. The bureau marked the stock exempt. The Henninger return for the year 1968 does not report ownership of United Utilities, Inc. stock. The Henninger return for 1969 reported ownership but does not indicate the number of shares. The bureau marked the stock exempt. The aggregate actual value of the taxable property was not reported in the returns.

"4. The Ritts return for 1967 does not report ownership of stock in United Utilities, Inc. Nor do the Ritts Estate returns for 1968 and 1969 show such ownership. In 1970 the Ritts Estate reported ownership of 3855 shares without stating the date of acquisition. The aggregate actual value of taxable property was not reported in the returns."

In 1970 the Personal Property Tax Bureau of Butler County was prompted by a stockholder of United to make inquiry of the Bureau of Corporate Taxes of the Commonwealth of Pennsylvania concerning United's exempt status and whether it still held a certificate of authority to do business in Pennsylvania. The answer to that inquiry produced the genesis of these appeals. For the first time the parties to this litigation learned that, on November 15, 1966, United had filed a withdrawal certificate, effective as of September 13, 1966, and that United had stated that it had never had taxable activities in Pennsylvania and, as a consequence, United's stock had been subject to the personal property tax at all times. The tax assessments in question here were made for the years 1967,

1968 and 1969, and appeals from such assessments were taken to the Board of Revision of Taxes of Butler County and were denied. Further appeals to the Court of Common Pleas of Butler County were dismissed. These appeals followed.

The Act of June 17, 1913, P. L. 507, §1, as amended, 72 P.S. §4821, provides in part that "[a]ll personal property of the classes hereinafter enumerated, owned, held or possessed by any resident . . .—is hereby made taxable annually for county purposes . . . at the rate of four mills of each dollar of the value thereof, and *no failure to assess or return the same shall discharge such owner or holder thereof, from liability therefor. . . .*" (Emphasis supplied.)

Section 5 of the Act of June 17, 1913, P. L. 507, as amended, 72 P.S. §4844, provides in part that "[i]f any taxable resident shall . . . fail to include in any return all of his property made taxable . . . or shall file a return which is . . . incomplete, incorrect or inaccurate, the board of revision of taxes, or the county commissioners, shall make an assessment of the tax against such resident of the amount of tax for which such resident is liable . . . .

. . . .

"An assessment, as herein provided, may be made by the board of revision of taxes, or the county commissioners, at any time within five years after any property owned, held or possessed, or alleged to have been so owned, held or possessed, by any resident should have been returned by him for taxation, notwithstanding he shall have paid a tax assessed on the basis of returns previously made or filed . . . ."

These two sections of the Act of 1913, as amended, clearly provide for the assessment here questioned. However, appellants contend that, since they submitted the returns in good faith and were informed by the em-

ployes of the commissioners that the United stock was exempt from the personal property tax, the County of Butler is estopped from collecting the tax. This argument is capsulized in the brief filed on behalf of one of the appellants (Estate of Elias Ritts, deceased) by a question: "The real issue here is—who bears the expense of the County's mistake, the County or the individual?"

The Pennsylvania Supreme Court answered that question in *Commonwealth v. Western Maryland Railway Company,* 377 Pa. 312, 105 A. 2d 336 (1954), when it stated: "No errors or misinformation of officers or agents can estop the government from collecting taxes legally due. However firmly established the rule as to private individuals or corporations that where a person has been induced to act to his detriment by the representations of an agent he can hold the principal on the theory of estoppel, that rule does not apply when a government is the principal . . . . ' ". . . Accordingly, the State is not estopped to levy and collect taxes on particular property by failure to assess it for a number of years, nor can the rights of the State in this respect be forfeited by the laches of its agents; . . .'" 61 C. J. 87, and cases cited. "Neither a state nor a municipality is estopped to tax property because of failure for a number of years to exercise such right.': Cooley on Taxation (4th ed.), page 159.'" 377 Pa. at 321-22, 105 A. 2d at 341.

An analogous situation was encountered in *West Penn Power Company v. Nationwide Mutual Insurance Company,* 209 Pa. Superior Ct. 509, 228 A. 2d 218 (1967). In *West Penn* a public utility company filed an action in assumpsit for payment of electric service supplied to a customer. Over a period of thirty-one months, the utility company, because of an error in billing or inadvertence on its part, billed the customer

for less than the amount of electric service supplied. The customer paid the bills as presented, and the action was brought for the difference between the amount billed and paid and the amount that should have been billed and paid based on the quantities actually supplied. The Superior Court held that, even where the erroneous monthly statements were paid by checks which contained an endorsement that the payee's endorsement constituted a receipt and release in full for all accounts and claims mentioned in the statement, the statement of an account did not work an estoppel.

Further, we have carefully reviewed the record in these appeals and are in full accord with the following from the lower court's opinion:

"None of the taxpayers involved in these appeals filed a complete, correct and accurate return. Each failed to report the actual value of the United Utilities, Inc. stock that was made taxable by the Act. Each failed to include in the aggregate actual value of their taxable property the United Utilities, Inc. stock which was definitely taxable. It makes no difference that the error was made by a clerk of the tax claim bureau. The clerk was doing the work of the taxpayer. The certification was that of the taxpayer. The law required the taxpayer to certify to aggregate value of taxable property. The fact that the tax bureau also was mistaken as to the taxability of the particular stock does not relieve the taxpayer of making a complete, correct and accurate return of taxable property. The burden, under the Act of Assembly, is on the taxpayer, not the tax bureau.

. . . .

"These taxpayers had the best possible reason for filing returns which were incomplete, incorrect or inaccurate. Probably no taxpayers have ever had a better excuse since taxpayers and tax bureau alike con-

sidered United Utilities, Inc. stock tax exempt. Under the circumstances it would be unfair and unjust to assess the severe penalty of 12% as provided by Section 5. These taxpayers are only liable for the tax as assessed on the value of the stock plus 6% interest from the date that the tax became delinquent."

Although, under the circumstances of this case, the County Commissioners had the discretionary power to exempt the appellants from the twelve percent assessment penalty for the tax years in question (*Dunbar Appeal*, 446 Pa. 184, 285 A. 2d 853 (1972)), we believe the lower court could conclude that it would be unfair and unjust to assess the penalty here. The lower court's approval of the imposition of interest for the period prior to the assessment of the tax by the Commissioners was proper and did not constitute a deprivation of property without due process of law, since the full and correct tax was due the date the return made by the appellants was filed. *Commonwealth v. Southern Pennsylvania Bus Company*, 339 Pa. 521, 15 A. 2d 375 (1940); *Goldstein v. Pittsburgh School District*, 170 Pa. Superior Ct. 451, 87 A. 2d 76 (1952).

Order affirmed.

---

OPINION BY JUDGE KRAMER (CONCURRING IN PART AND DISSENTING IN PART):

While I concur with my brothers in the majority as to the liability for the personal property tax due and payable upon the ownership of the capital stock of United Utilities, Inc. (United) by all of the appellants in this case, I must register this dissent insofar as the majority has permitted interest to be charged against the appellants dating back to the date the tax became delinquent (as ordered by the lower court) for the respective years involved.

The majority cites two cases for their holding that interest was so due. Both of these cases not only can be distinguished on their facts, but further lend support to the tenor of this dissent that interest should not be charged from the tax delinquency date of the respective years. In the case of *Commonwealth v. Southern Pennsylvania Bus Company*, 339 Pa. 521, 15 A. 2d 375 (1940), our Supreme Court held that interest was due back to the due date because the taxpayers "were then in possession of all facts necessary to ascertain the value of the taxable property." 339 Pa. at 532, 15 A. 2d at 381. In this case everyone is in accord that neither the taxing authorities nor the taxpayers had any idea that the subject stock was anything other than exempt on the due dates of the respective years. As a matter of fact, as the majority opinion highlights, all of the published tax services used in this area of tax law had listed the subject stock as exempt. Furthermore, the Court pointed out in *Southern Pennsylvania Bus Company, supra,* that the taxpayer could have determined the tax due and owing, and that this fact created the liability for interest payment. In the second case relied upon by the majority, *Goldstein v. Pittsburgh School District*, 170 Pa. Superior Ct. 451, 87 A. 2d 76 (1952), our Superior Court once again relied upon the fact that the taxpayer possessed all of the facts upon which a complete and correct return could have been made. The court there stated that the taxpayer should know with certainty what amount he is required to pay before interest should be charged for "otherwise it would be inequitable to charge him with interest." The *Goldstein* court stated: "The purpose of charging interest and imposing penalties for non-payment is to encourage and enforce full and prompt payment of taxes." 170 Pa. Superior Ct. at 458, 87 A. 2d at 80.

It is axiomatic that the taxing authorities can collect only those moneys for taxes, penalties and interest which the statutes permit. The majority quite properly refers to the statute under which the four mill personal property tax was imposed in this case, i.e., Act of June 17, 1913, P. L. 507, §1, as amended, 72 P.S. §4821. It is this writer's position that the majority did not go quite far enough. In Section 4.1 of that same Act, 72 P.S. §4843.1, is found the provision for charging interest. It states in Subsection (c) thereof: "The tax imposed by this act shall be due and payable at the same time, and subject to the same conditions as to discounts, penalties *and interest,* as in the case of real property taxes imposed by the county for county purposes. . . ." (Emphasis added.) The provision for interest in the collection of real property taxes is found in the Act of July 7, 1947, P. L. 1368, art. III, Section 306, 72 P.S. §5860.306, wherein it is stated that the county commissioners and the county treasurer must make a return to the bureau before a certain date and that thereafter, "[i]nterest shall be charged on taxes so returned from and after the first Monday of May of the year of return at the rate of six per centum (6%) per annum." Here no such return could have been made until after it was determined the subject stock was not exempt.

In conclusion then, it is the position of this writer that in view of the facts (1) that the taxing authorities did not know of the tax liability on the delinquency date, and (2) that the taxpayer had no knowledge of any tax due on the subject stock until he received notice from the taxing authority, or knowledge of such fact, interest cannot be charged prior to that date. Therefore, under the facts of this case, I would reverse the court below and remand the matter back to determine the exact date upon which each of the appellants

in these cases first received notice that the tax was due and payable. I would give directions to the lower court to determine and charge interest only from that date of notice to, or knowledge by, the taxpayer.

Judge ROGERS joins in this Concurring and Dissenting Opinion.