## Buhl's Estate.

Argued March 19, 1930. Before MOSCHZISKER, C. J., WALLING, SIMPSON, SADLER and SCHAFFER, JJ.

30

*B. J. Jarrett,* of *McCook & Jarrett,* for appellants.—
Executors are within the Act of 1913.

The managers of the Buhl Foundation are within the Act of 1913.

The securities returned for taxation were a part of Mr. Buhl's general estate and if they passed to the Buhl Foundation, they passed only under the residuary clause of the will after the administration of the estate had been completed: Weir's Est., 251 Pa. 499; Hastings v. Long, 11 Pa. Dist. R. 370.

The securities, while in the hands of the executors for the purpose of administration, were not in the use and possession of the charity and therefore not exempt from taxation: Wagner Free Institute v. Phila., 132 Pa. 612; Phila. v. Barber, 160 Pa. 123; Hastings v. Long, 11 Pa. Dist. R. 374.

*Arthur B. Van Buskirk,* with him *Reed, Smith, Shaw & McClay,* for appellees.—The Act of June 17, 1913, P. L. 507, section 1, does not subject the property here in question to the payment of the four mill tax.

The Buhl Foundation is clearly a charity under the law of Pennsylvania: Kimberly's Est. (No. 3), 249 Pa. 483, 487; Centennial & Memorial Assn. of Valley Forge, 235 Pa. 206, 210, 211; Taylor v. Hoag, 213 Pa. 194, 196.

Even though embraced in the general provisions of the Act of 1913, the personal property in question is exempted from tax under the well settled law of Pennsylvania: Mattern v. Canevin, 213 Pa. 588.

Property held by an executor and distributable to a charity is likewise exempted from personal property tax: McClintock's App., 29 Pa. 360.

OPINION BY MR. JUSTICE SIMPSON, April 14, 1930:

By testator's will, he gave a large number of pecuniary legacies to individuals and public charities, and then bequeathed and devised his residuary estate to the managers of the Buhl Foundation (which it is admitted is a charitable institution), the principal and interest thereof to be used for charitable purposes only. Upon the distribution following the first account of the executors, all the gifts made by the will, except that to the managers of the Buhl Foundation, were fully paid and satisfied. The result of this was that the remaining assets of the estate, after deducting the additional costs of administration, if any, were devoted by testator to such charitable uses. Subsequently, the executors made two annual payments of the yearly tax on bonds, shares of stock and other securities in their hands, without awaiting the decision of the orphans' court as to the propriety of so doing. When they filed their second account, they claimed credits for these payments, which were disallowed on objection by the managers of the Buhl Foundation; the executors were surcharged accordingly, and from this decree they now appeal.

Section 1 of the Act of June 17, 1913, P. L. 507, which the executors claim required them to make those payments, provides as follows: "All personal property of the classes hereinafter enumerated, owned, held, or possessed by any person, persons, copartnership, or unincorporated association or company, resident, located, or liable to taxation within this Commonwealth, or by any joint-stock company or association, limited partnership, bank or corporation whatsoever, formed, erected, or incorporated by, under, or in pursuance of any law of this Commonwealth or of the United States, or of any other State or government, and liable to taxation within this

Commonwealth, whether such personal property be owned, held, or possessed by such person or persons, co-partnership, unincorporated association, company, joint-stock company or association, limited partnership, bank, or corporation in his, her, their, or its own right, or as active trustee, agent, attorney-in-fact, or in any other capacity, for the use, benefit, or advantage of any other person, persons, copartnership, unincorporated association, company, joint-stock company or association, limited partnership, bank, or corporation,—is hereby made taxable, annually, for county purposes, and, in cities co-extensive with counties, for city and county purposes, at the rate of four mills on each dollar of the value thereof, and no failure to assess or return the same shall discharge such owner or holder thereof from liability therefor."

On the point under consideration, this section of the statute is exactly the same as section 1 of the Act of June 1, 1889, P. L. 420, which was construed in General Assembly v. Gratz, 139 Pa. 497, and section 1 of the Act of June 8, 1891, P. L. 229, which was construed in Mattern v. Canevin, 213 Pa. 588, as not imposing this character of tax upon securities devoted to public charity. This being so, the general rule applies that where in a later act the legislature uses the same language as in a prior cognate statute, which had been construed by us, the presumption is that the language thus repeated is to be interpreted in the same way it previously had been when considering the earlier statute: Spangler's Est., 281 Pa. 118; Bell v. Bell, 287 Pa. 269.

It will be noticed that the decisions in General Assembly v. Gratz, supra, and Mattern v. Canevin, supra, are not based on an exempting clause in any statute, but on the legal conclusion that the true interpretation of the Acts of 1889 and 1891, is that the legislature did not intend to abandon its long established policy of refusing to tax securities devoted to purely public uses. It was said in the first of those opinions (139 Pa. 502, 504),

"Much of the able argument made by the learned counsel for the defendants was devoted to the consideration of the Act of 1874, and to show that the plaintiffs are not exempted by that act from the operation of the Act of 1889. The determination of the present case, however, does not depend upon that point, but rather upon the inquiry whether the plaintiffs are within the Act of 1889...... The Act of 1874 would not appear, therefore, to have much to do with the solution of this important question......we must remember that it is not incumbent upon the plaintiffs to show any exemption, until it is first clearly demonstrated that they are subject to the tax; that they are clearly embraced within the words and meaning of the act imposing the tax"; And it was held they were not. It follows that, as the Act of 1889, there being considered, did not charge purely public charities with this kind of tax, and the Act of 1913, now being construed, is in exactly the same language, so far as concerns the present question, it must be likewise so interpreted, and the argument of appellants, based on the provisions of exempting statutes, has no relevancy whatever.

This being so, they practically admit that if the securities upon which they paid a tax had been in the hands of the charities themselves, no tax could have been collected; but they aver that, as those securities were still in the hands of the executors, awaiting distribution by the orphans' court, General Assembly v. Gratz, supra, and Mattern v. Canevin, supra, where the securities were in the actual possession of the charities, are not applicable. Upon this they have made an ingenious and interesting argument, but it forgets what was really decided in the cases cited. The question there determined was not based on a consideration of where the securities were or by whom they were held, but whether they were devoted to charitable uses, as both there and here they were. It was distinctly pointed out that securities which were given for charitable purposes, were

not held by the possessor of the muniments of title "in his, her, their, or its own right, or as active trustee, agent, attorney-in-fact, or in any other capacity, for the use, benefit, or advantage of any other person, persons, copartnership, unincorporated association, company, joint-stock company or association, limited partnership, bank, or corporation," as the statute requires they must be in order to be taxable under it. Admittedly, in the case of public charities the securities are not held by the trustees "in his, her, their, or its own right"; and (139 Pa. 504-5) : "The trusts mentioned are not trusts for particular persons, but for particular objects. It may be that in the administration of the trusts for these charitable and religious objects some person may be incidentally benefited, but he is not a person entitled by law to 'the use, benefit, or advantage' of the trust, or who has by law any beneficial interest or ownership in it whatever. The funds are not held in trust for any person whomsoever, but to be applied to the particular charities and religious purposes mentioned, in the discretion of the trustees; so that no person or individual can possibly be said to have any legal right or interest in it whatever. Nor can it be correctly said, in any legal sense, that the plaintiffs are trustees for any person. If that were so, such person could come into court and demand the 'use, benefit, or advantage' of the property held in trust for him. But it is quite plain that, as to the trusts described in the plaintiffs' bill, no person would for a moment have any standing in court to do that. No person exists who can say that he has any legal or equitable claim to the property held in trust by the plaintiffs, or to any 'use, benefit, or advantage' thereof. They do not hold it in trust for any person, but in trust for certain charitable and religious objects."

Appellants' further suggestion that "It *might* become necessary to sell them [the securities upon which the taxes were paid] to secure cash to pay the inheritance tax or the expense of administration," does not help

them. We are not interested in what *might* have been, but in what was the fact. Moreover, securities held for such purposes are not taxable. Nor does the opinion in Estate of Dalzell, deceased, 96 Pa. Superior Ct. 467, assist them. The executors in that estate were held to be within the purview of the statute and the tax properly charged, because the securities there in course of administration were bequeathed to individuals who would have had to pay the tax had they been previously distributed in accordance with decedent's will. Here exactly the reverse is true.

It is clear, therefore, that it is a matter of indifference by whom the securities in the present estate were held. As, under the facts above stated, they were devoted to public charity, no matter in whose custody they were temporarily, they were not for the benefit of the trustees themselves or for any other person, but were devoted to particular charitable purposes, are not within the purview of the statute, and the taxes on them were improperly paid.

The decree of the court below is affirmed and the appeal is dismissed; costs to be paid by the estate of testator.