918 A.2d 95

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Ravah DICKSON, Appellant.**

Supreme Court of Pennsylvania.

Argued Sept. 14, 2005.

Decided March 29, 2007.

Karl Baker, Esq., Peter Rosalsky, Esq., Karl Lawrence Morgan, Esq., Philadelphia, for Ravah Dickson.

Hugh J. Burns, Esq., Regina M. Oberholzer, Philadelphia, for Commonwealth of Pennsylvania.

BEFORE: CAPPY, C.J., and CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

## *OPINION*

Justice BAER.

We are asked to consider whether the sentencing enhancement codified at 42 Pa.C.S. § 9712, which imposes a mandatory sentence enhancement on a person who visibly possesses a firearm or firearm replica during the commission of a crime of violence,[1] applies to an unarmed co-conspirator to the underlying crime where his accomplice brandishes a firearm during the commission of the offense. Before reaching the merits, however, we must determine whether Appellant waived his challenge to § 9712 by failing to raise it first in the trial court. We find that Appellant preserved the issue raised herein in the lower courts, and that it therefore is ripe for our review. We also hold that the Superior Court has erred in applying the § 9712 sentencing enhancement to unarmed co-conspirators. Thus, we reverse.

## I. Background

The facts underlying Appellant's conviction are neither complicated nor subject to material dispute. The afternoon of April 21, 2001, found Derek Cunningham, the victim, speaking with Tiara Van Leer. Cunningham recently had sold Van Leer a car; presently, she was asking Cunningham to take back the

---

1. Section 9712 provides, in relevant part:

 **(a) Mandatory Sentence.—** ... [A]ny person who is convicted in any court of this Commonwealth of a crime of violence as defined in section 9714(g) ... shall, if the person visibly possessed a firearm or a replica of a firearm, whether or not the firearm or replica was loaded or functional, that placed the victim in reasonable fear of death or serious bodily injury, during the commission of the offense, be sentenced to a minimum sentence of at least five years of total confinement notwithstanding any other provision of this title or other statute to the contrary. Such persons shall not be eligible for parole, probation, work release or furlough.

 ❊ ❊ ❊ ❊

 **(c) Authority of court in sentencing.—**There shall be no authority in any court to impose on an offender to which this section is applicable any lesser sentence than provided for in subsection (a) or to place such offender on probation or to suspend sentence.

 42 Pa.C.S. § 9712.

car and refund the sales price. Cunningham agreed to take back the car, but offered to refund only $250 of the $300 sales price.

Van Leer's cousin Ravah Dickson (Appellant), who stood nearby, expressed the view that Cunningham should refund Van Leer more than $250 of the sales price. Appellant then left the scene and returned a few minutes later with co-defendant William Brown and one Bruce Veney, also Van Leer's cousin.[2] Soon after their return, Appellant restrained Ruffin in a bear hug while Brown pulled a gun, placed it against Cunningham's head, and demanded all of Cunningham's money and the keys to the car. Cunningham surrendered $256 and the keys. Appellant warned Cunningham not to call the police, then he and the others left the scene.

Appellant and Brown were arrested and tried together before a jury in the Court of Common Pleas of Philadelphia County. Brown was convicted of robbery and criminal conspiracy;[3] Appellant was convicted of conspiracy but acquitted of robbery.

On March 25, 2002, the trial court convened a sentencing hearing. There, Appellant, noting that the original indictment was couched in terms of theft, robbery, and conspiracy to commit same, and further pointing out that he was convicted of conspiracy but acquitted of robbery, argued that his conspiracy offense should be graded as a misdemeanor since the jury verdict was ambiguous regarding to which predicate offense (*i.e.*, theft or robbery) the conspiracy conviction applied. The Commonwealth disagreed—and the trial court shared its view—that the charge of conviction, criminal conspiracy, was criminal conspiracy to commit robbery.[4] *See*

2. Also present was Ms. Angel Ruffin, who is Van Leer's sister, Appellant's and Veney's cousin, and also was, it turns out, Cunningham's girlfriend.

3. *See* 18 Pa.C.S. §§ 3701, 903, respectively.

4. Indeed, it is difficult to read the transcript in any other way. Although he originally was charged with theft, Appellant was arraigned only for robbery and criminal conspiracy, and therefore presumptively was tried for robbery and conspiracy to commit robbery. Notes of Testimony, 2/12/02, at 4–5.

Notes of Testimony (N.T.), 3/25/02, at 5 ("**THE COURT:** . . . The jury found you guilty of Conspiracy to Rob . . .").

Appellant next called the court's attention to an *Apprendi* motion then pending.[5] He argued that because the Commonwealth need only prove by a preponderance of the evidence that the mandatory minimum sentence applies, § 9712 violates *Apprendi's* requirement that all substantive elements of an offense be proved before a jury beyond a reasonable doubt.

Before the trial court could interject, Appellant then argued that application of the mandatory minimum "takes away the discretion of the court to impose a lesser sentence." N.T., 3/25/02, at 4. Appellant proceeded to argue, based on the differences between Appellant's and co-defendant's conduct, that Appellant's case warranted precisely the lesser sentence precluded by application of the § 9712 mandatory minimum. The court cut Appellant's counsel off, however, foreclosing further argument:

I think case law is supportive of the Commonwealth's position. I have no discretion.

Mr. Dixon, on bill of information 0022, January Term 2002, where the jury found you guilty of Conspiracy to Rob, this court sentences you to five to ten years in a state correctional institution, [and] 207 dollars cost[s] of court.

N.T., 3/25/02, at 5. Appellant's judgment of sentence, therefore, was precisely the minimum sentence permissible given the trial court's reading of the law to require imposition of the § 9712(a) mandatory minimum sentence of five years.

On direct appeal, Appellant contested the validity of the application of § 9712(a) to an unarmed co-conspirator. The Superior Court, noting that it repeatedly has rejected this argument, *see, e.g., Commonwealth v. Chiari,* 741 A.2d 770 (Pa.Super.1999), and that this Court has denied allowance of appeal of these rulings, *see, e.g., Commonwealth v. Walker,*

**5.** Plainly, Appellant referred to the United States Supreme Court's decision in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). The certified record does not contain the motion in question, but this deficiency is immaterial because Appellant has not pursued this argument on appeal.

386 Pa.Super. 100, 562 A.2d 373 (1989), *appeal denied,* 525 Pa. 618, 577 A.2d 889 (1990), declined Appellant's invitation to overturn its prior precedent and affirmed Appellant's judgment of sentence. This appeal followed.

## II. Waiver

Preliminarily, we must determine whether Appellant failed in the trial court to raise his challenge to the application of 42 Pa.C.S. § 9712, and, if so, whether this failure waived any later challenge on appeal. The Superior Court disregarded the first part of this inquiry, and summarily disposed of the latter part with a single sentence: "As Appellant's claim implicates the legality of his sentence, Appellant may appeal as of right." Super. Ct. Slip Op. at 2 (citing *Commonwealth v. Eddings,* 721 A.2d 1095, 1098 (Pa.Super.1998)). Were the latter proposition unproblematic, we might well decide similarly; if the sentence clearly implicates the legality of sentence, whether it was properly preserved below is of no moment, as a challenge to the legality of sentence cannot be waived. *See, e.g., Commonwealth v. Aponte,* 579 Pa. 246, 855 A.2d 800, 802 n. 1 (2004). While this Court is clear on the non-waivability of challenges to sentences based upon their legality, we continue to wrestle with precisely what trial court rulings implicate sentence legality. *See, e.g., McCray v. Pennsylvania Dep't of Corrs.,* 582 Pa. 440, 872 A.2d 1127, 1138 (2005) (Saylor, J., concurring) (noting "prevailing uncertainty concerning the breadth of the legality-of-sentence exception to general principles of waiver and preclusion").

The Commonwealth contends that Appellant failed to preserve the argument raised before this Court—that § 9712 in plain terms cannot apply to enhance the sentence of an unarmed co-conspirator. Rather, it argues, at sentencing "[Appellant] objected to the imposition of the mandatory minimum on the grounds that the jury had supposedly convicted him of conspiracy to commit theft, to which the mandatory minimum does not apply, and that the sentence violated *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147

L.Ed.2d 435 (2000)." Brief for Appellee at 4 (record citation and footnotes omitted).

Appellant, who did not anticipate the waiver argument in its principal brief to this Court, responds in his Reply Brief that the Commonwealth has misconstrued the record. Specifically, he argues that while he initially allowed that he "would certainly have to concede the mandatory issue," Reply Brief for Appellant at 2 (quoting N.T., 3/25/02, at 2), he did so only after submitting three specific challenges to the trial court— "one directed to verdict; one directed to *Apprendi* . . .; and one directed to the concern raised in this appeal." Reply Brief for Appellant at 3. He then quotes an exchange in which he argued that "applying the mandatory minimum takes away the discretion of the court to impose a lesser sentence" and that his case called for precisely the sort of downward deviation precluded by a mandatory sentence. Reply Brief for Appellant at 3 (quoting N.T., 3/25/02, at 3–4). The court, however, cut off Appellant's argument, observing, "I think case law is supportive of the Commonwealth's position. I have no discretion." N.T., 3/25/02, at 4. Focusing on the trial court's statement precluding further argument on the application of the mandatory minimum sentence, Appellant argues that "[w]here, as here, the trial court correctly recognized [A]ppellant's claim in its nascency [*sic* ], but cut [A]ppellant off before it could be fully articulated based upon a clear line of extant appellate authority, it would be unreasonable and unfair to hold the claim waived." Reply Brief for Appellant at 4.

■ While the Commonwealth raises a colorable claim that Appellant did not expressly preserve the application of § 9712 to an unarmed co-conspirator in the robbery here at issue, Appellant ultimately must prevail. In context, the relevant colloquy reveals that Appellant exhausted his argument regarding whether the conspiracy conviction concerned the underlying theft or robbery charges, and indeed the court resolved any uncertainty when it stated on the record that the conspiracy charge applied to robbery. Upon losing that argument, Appellant shifted gears to make a brief argument under *Apprendi* and then segued seamlessly into his argument that

the consequence of the mandatory minimum was more harsh than this case warranted.

The Commonwealth is correct insofar as Appellant never explicitly argued that § 9712 cannot apply in this case because Appellant was not armed. Whether this deficiency occurred because counsel did not entirely appreciate the issue or because the court cut counsel off mid-argument to preempt any further discussion is something we cannot know at this time. What we do know is that counsel argued that Appellant's conduct differed from his co-defendant's to an extent counsel believed should have taken Appellant's case outside application of the mandatory minimum. The trial court clearly ruled it had "no discretion." N.T., 3/25/02, at 5. The court having made itself clear, we will not punish counsel for declining to resist the trial court's unequivocal effort to cut off conversation on this point. Accordingly, because we disagree with the Commonwealth's characterization of Appellant's argument before the trial court, and find implicit in that argument the § 9712 argument raised before the Superior Court and now this Court, we conclude that Appellant preserved the issue for appellate review.

### III. The Mandatory Minimum Sentence

This brings us to the question that lies at the heart of this case: Whether the mandatory minimum sentence set forth in 42 Pa.C.S. § 9712 applies to an unarmed co-conspirator where his accomplice visibly possesses a firearm during the commission of the underlying crime. Because this presents a pure question of law, our standard of review is *de novo* and the scope of our review is plenary. *Craley v. State Farm Fire & Cas. Co.*, 586 Pa. 484, 895 A.2d 530, 539 (2006).

The instant question requires us to interpret § 9712. In interpreting a statute, we must ascertain and effectuate the intention of the General Assembly. *See* 1 Pa.C.S. § 1921(a). When statutory language is clear and free from all ambiguity, it generally furnishes the best indication of legislative intent; we must not disregard the statutory language under the pretext of pursuing its spirit. 1 Pa.C.S. § 1921(b); *Bowser v.*

*Blom*, 569 Pa. 609, 807 A.2d 830, 835 (2002). Accordingly, a reviewing court should resort to other considerations to determine legislative intent only when the words of the statute are not explicit. 1 Pa.C.S. § 1921(b); *O'Rourke v. Commonwealth, Dep't of Corrs.*, 566 Pa. 161, 778 A.2d 1194, 1201 (2001). Finally, while minding our other principles of statutory construction, we must construe all penal provisions strictly in favor of defendants' liberty interests. 1 Pa.C.S. § 1928(b)(1); *cf. Commonwealth v. Wooten*, 519 Pa. 45, 545 A.2d 876, 879 (1988) ("[W]here an ambiguity exists in the language employed by the legislature in a penal statute, it should be interpreted in a light most favorable to the criminally accused."). *But see id.* at 880 ("While strict construction of penal statutes is required, however, courts are not required to give words of a criminal statute their narrowest meaning or disregard evident legislative intent.")

■ Section 9712 provides, in relevant part,

(a) **Mandatory Sentence.**— ... *[A]ny person* who is convicted in any court of this Commonwealth of a crime of violence as defined in section 9714(g) ... *shall, if the person visibly possessed a firearm or a replica of a firearm,* whether or not the firearm or replica was loaded or functional, that placed the victim in reasonable fear of death or serious bodily injury, during the commission of the offense, *be sentenced to a minimum sentence of at least five years of total confinement* notwithstanding any other provision of this title or other statute to the contrary. Such persons shall not be eligible for parole, probation, work release or furlough.

* * * * * *

(c) **Authority of court in sentencing.**—There shall be no authority in any court to impose on an offender to which this section is applicable any lesser sentence than provided for in subsection (a) or to place such offender on probation or to suspend sentence.

42 Pa.C.S. § 9712 (underscoring added). Section 9714(g), from which § 9712 draws its definition of "a crime of violence," provides:

> [T]he term "crime of violence" means murder of the third degree, voluntary manslaughter, aggravated assault ..., rape, involuntary deviate sexual intercourse, aggravated indecent assault, incest, sexual assault, arson ..., kidnapping, burglary of a structure adapted for overnight accommodation in which at the time of the offense any person is present, robbery as defined in 18 Pa.C.S. § 3701(a)(1)(i), (ii) or (iii) (relating to robbery), or robbery of a motor vehicle, or criminal attempt, criminal conspiracy or criminal solicitation to commit murder or any of the offenses listed above, or an equivalent crime under the laws of this Commonwealth in effect at the time of the commission of that offense or an equivalent crime in another jurisdiction.

42 Pa.C.S. § 9714(g).[6]

The question before us lies not in the validity of § 9712,[7] nor in its application to robbery, which undisputedly is a "crime of violence" pursuant to § 9714(g), but rather in the gravamen of the section's explicit prescription that the sentence apply to one who "visibly possesses a firearm" during the commission of the predicate offense. The trial court, and the Superior Court on appeal, determined that prior Superior Court precedent bound them to apply the mandatory sentence to Appellant, notwithstanding that Appellant himself did not brandish a firearm during the robbery. *See Commonwealth v. Crist,* 880 A.2d 696 (Pa.Super.2005); *Commonwealth v. Reeves,* 778 A.2d 691 (Pa.Super.2001); *Commonwealth v. Walker,* 386 Pa.Super. 100, 562 A.2d 373 (1989); *Commonwealth v. Williams,* 353 Pa.Super. 312, 509 A.2d 1292 (1986).

**6.** The parties do not dispute that robbery is a crime of violence pursuant to § 9714(g), and Appellant has not renewed his argument before this Court that his conviction for criminal conspiracy concerned the original charge of theft, which the Commonwealth did not pursue at trial.

**7.** We upheld a predecessor version of § 9712 against constitutional challenge in *Commonwealth v. Wright,* 508 Pa. 25, 494 A.2d 354 (1985).

Appellant insists that the language of § 9712(a) is plain, and that the Superior Court's two decades of decisions inconsistent with that language must be reversed. The Commonwealth insists that the Superior Court's conclusions are valid, and moreover that amendments to related provisions in the wake of the Superior Court's decisions have signaled the legislature's acquiescence to those rulings. While we are not eager to disturb established precedent, where caselaw has obscured the legislative intent manifest in its most trustworthy source, the statutory language, we cannot simply fall back on an attenuated assertion of *sub silentio* legislative acquiescence and wash our hands of the stain.

Viewed in isolation, § 9712(a) could not be more clear that it is "the person" who "visibly possesses a firearm or a firearm replica"—and that person *only*—to whom the mandatory minimum sentence applies. Indeed, if the provision were not part of a larger, frequently analyzed and frequently amended statutory scheme, settling this issue would require no further analysis.[8] Thus, as the Commonwealth implicitly acknowledges, it is *only* by reference to the surrounding provisions and other indicia of legislative intent that defy the plain language reading that this Court might rule in contradiction of that plain language. Our principles of statutory construction require us to look no farther than the provision in question when its language is unambiguous, 1 Pa.C.S. § 1922(b), but here the provision in question cross-references another section for definitional purposes, which complicates the inquiry.

**8.** Mr. Justice Castille finds fault in our refusal to ratify twenty years of Superior Court precedent. No passage of time, however, can diminish this Court's mandate to glean legislative intent from the language chosen by the legislature where that language is clear and free from ambiguity, the guiding principle of statutory interpretation we find dispositive in this case. *See Bowser,* 807 A.2d at 835. Indeed, in proposing alternative legislative language to remedy the error perceived in our Opinion, Diss. Op. of Justice Castille at 392 n. 3, 918 A.2d at 112 n. 3, the dissent in effect buttresses our point—that the construction offered by the Superior Court does not comport with the statute's plain language. Notably, Mr. Justice Castille does not argue that § 9712(a) is ambiguous on its face or that it otherwise resists the plain language interpretation offered herein.

We begin by reviewing the Superior Court decision from which the instant challenge derives. In *Commonwealth v. Williams*, two young men robbed a man, with Williams' co-conspirator threatening their victim with a pellet gun. 509 A.2d at 1292–93. The trial court declined to impose the five-year minimum sentence on Williams in part because Williams never visibly possessed the gun during the commission of the crime. *Id.* at 1293. The Commonwealth appealed the court's more lenient sentence, and the Superior Court ruled that the trial court should have applied the § 9712 mandatory minimum sentence to Williams.[9] In so ruling, the Superior Court simply did not address itself to the plain language of the provision in question. Finding no dispositive Pennsylvania caselaw concerning the section's applicability to an unarmed co-conspirator, the court moved directly to an analysis of foreign jurisdictions' resolutions of similar questions under their corollary statutes. Having reviewed the cases, and identifying no conclusive trend in favor of either disposition, the court concluded that it was "persuaded by the case law in those jurisdictions which impose the minimum sentence of confinement on an unarmed accomplice who has knowledge that a firearm is employed in the commission of the pertinent felony." *Id.* at 1295. The court, in rationalizing its conclusion, found it "anomalous to sentence the armed felon in accordance with the minimum sentence, while not similarly punishing an accomplice who is otherwise legally accountable for the actions of the armed felon," especially where the unarmed accomplice "saw the gun in question, knew it was to be used in perpetration of the robbery and pleaded guilty to the conspiracy and the robbery." *Id.* Without addressing ourselves to the court's analysis of foreign caselaw in *Williams,* which we find unnecessary to the disposition of the instant question, we have reservations about a holding couched exclusively in terms of the potentiality of "anomalous" outcomes that ignores the

9. The language of § 9712(a) differed then from its current form, but in no respect material to the instant appeal. Then, as now, the statute imposed its penalty against "[a]ny person" convicted of certain predicate offenses "if the person visibly possessed a firearm during the commission of the offense." *See infra* at 377–80, 918 A.2d at 103–04 (regarding amendments to § 9712).

statutory language in question. While anomalies in the law may be regrettable and indeed may militate in favor of an exception or a rule modification when presented, speculation concerning their possibility should not subordinate fundamental tenets of statutory construction. It bears repeating that, where the language of a statute is clear, we will not disregard the letter of it "under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b).

Nor are we the first to express reservations regarding the court's approach in *Williams*. Following close on the heels of that case, another panel of the Superior Court applied *Williams* under similar circumstances but expressed grave doubts about the correctness of that decision. In *Commonwealth v. Grimmitt*, 354 Pa.Super. 463, 512 A.2d 43 (1986), decided fewer than two months after *Williams*, the two judges in the panel majority [10] applied *Williams* but included a lengthy footnote highlighting problems with the *Williams* analysis. The court began by acknowledging that, under 18 Pa.C.S. § 306 ("Liability for conduct of another; complicity"), an accomplice is guilty of the same crime as that committed by the principal. 512 A.2d at 44 n. 1. The *Grimmitt* panel then quoted § 306(d):

> When causing a particular result is an element of an offense, an accomplice in the conduct causing such result is an accomplice in the commission of the offense, if he acts with the kind of culpability, if any, with respect to that result that is sufficient for the commission of the offense.

512 A.2d at 44 n. 1 (citing *Commonwealth v. Coccioletti*, 493 Pa. 103, 425 A.2d 387 (1981)). Thus, the court noted, substantial participation in *any* element of the offense, as such, is sufficient to implicate an accomplice in the entire substantive criminal offense committed by his cohort(s). *See Coccioletti*, 425 A.2d at 390 ("The least degree of collusion is sufficient to sustain a finding of responsibility as an accomplice."). Conversely, the court went on, § 9712 expressly provides that **"visible possession of a firearm** during the commission of one of the specified offenses **is not an element of the**

10. Judge Hoffman concurred in the result.

**underlying crime,** nor does it constitute a separate offense calling for a separate penalty." *Id.* (quoting 42 Pa.C.S. § 9712(b)) (emphasis changed).[11] Consequently, the court aptly observed, "the visible possession of a gun by defendant's cohort was not an element of the robbery." *Id.* By this reasoning, the court suggested that the traditional basis for applying the mandatory minimum penalty to an unarmed accomplice by ascribing to him equal culpability for each action of his armed cohort was inapplicable, or that the basis for the application of that principle was at best questionable.

The court then observed that, while § 306 assesses equal culpability for an accomplice, courts may impose "[d]isparate sentences" on co-conspirators in a given crime "so long as they accurately reflect the degree of culpability or the background of each defendant." *Id.* (citing *Commonwealth v. Landi*, 280 Pa.Super. 134, 421 A.2d 442 (1980)). Indeed, in *Landi*, the court observed, the rationale offered in support of disparate sentences was that one party had wielded a gun during the commission of the crime. *Id.* Turning to questions of policy, the court opined that the danger the legislature aimed to address

> is produced by the person wielding the firearm. It is that person who places the victim in greatest fear, and who can, with the slight pull of the trigger, kill or gravely injure the victim. To subject the armed felon to more severe punishment than the unarmed felon because of the immediate danger that the former presents to the victim would seem reasonable.

*Id.* Finally, the court noted that the courts are bound to construe penal provisions strictly in favor of life and liberty, *see Wooten*, 545 A.2d at 879–80, and returned to the clear language of § 9712, focusing on the person who visibly possesses a firearm and the fact that the statute makes no mention of accomplices. Observing that the then-effective

11. The same provision in the current statute provides: "Provisions of this section shall not be an element of the crime," and goes on to establish a preponderance of the evidence standard of proof for application of the mandatory minimum sentence to be assessed by the trial court. 42 Pa.C.S. § 9712(b).

statutory deadly weapon enhancement, 42 Pa.C.S. § 9721, 204 Pa.Code § 303.4,[12] applied where a defendant *or his accomplice* possessed or controlled a deadly weapon during the commission of the crime in question, the court considered the contrast probative of legislative intent insofar as the legislature signaled its appreciation of the distinction between armed and unarmed parties and signaled as well that it believed, at least in one context, that the distinction ought to be dealt with explicitly. The court's alternative analysis, it bears repeating, was merely an intellectual exercise in light of *Williams,* and the court recognized it as such. In the breech, the *Williams* reading of § 9712 continued to bind the Superior Court. *See, e.g., Commonwealth v. Matos,* 382 Pa.Super. 401, 555 A.2d 901 (1989) ("Even if we were to agree with the analysis set forth in [*Grimmitt* ], we are not in a position at this time to overrule *Williams.*"); *cf. Commonwealth v. Greene,* 702 A.2d 547, 552–53 (Pa.Super.1997) (declining to extend *Matos* to apply the deadly weapons enhancement to an unarmed accomplice whose cohort had possession of a gun during the commission of the crime).

The Commonwealth, like the Superior Court in *Williams* and its progeny, avoids the plain language of § 9712. Instead, somewhat tendentiously, the Commonwealth argues that "[i]n 1995, the General Assembly amended § 9712, greatly expanding the types of crimes to which the mandatory minimum applied and expanding the statute to include ***conspiracy*** and solicitation to commit the enumerated offenses." Brief for Appellee at 10 (emphasis in original). From this, the Commonwealth infers legislative intent "to include both armed and unarmed conspirators, because a conspirator need not even be present when the overt act occurs." Brief for Appellant at 10–11. This amendment, the Commonwealth concludes, amounts to ratification of the Superior Court's pre–1995 cases applying the mandatory minimum to unarmed co-conspirators.

The Commonwealth's representation of the 1995 amendments, while not inaccurate, partially misinterprets the effect

12. The deadly weapons enhancement now is found at 204 Pa.Code § 303.10.

of those amendments in ways that call into doubt the wisdom of construing the amendments as a ratification of Superior Court precedent. In 1995, the legislature overhauled several aspects of Titles 18 (Crimes and Offenses) and 42 (Judiciary and Judicial Procedure), including § 9712. *See* Act of Oct. 11, 1995, Pub.L. 1058, No. 21 (Spec.Sess. No. 1), § 4. In the only changes to § 9712 material to this section, the legislature replaced the express definition of to whom the mandatory sentence applied in the former § 9712(a) with a cross-reference to the definition of "crime of violence" contained in § 9714(g). The former § 9712(a) applied to

> [a]ny person who is convicted in any court of this Commonwealth of murder of the third degree, voluntary manslaughter, rape, involuntary deviate sexual intercourse, robbery as defined in 18 Pa.C.S. § 3701(a)(1)(i), (ii) or (iii) (relating to robbery), aggravated assault as defined in 18 Pa.C.S. § 2702(a)(1) (relating to aggravated assault) or kidnapping, or who is convicted of attempt to commit any of these crimes.

The 1995 amendment excised this language in favor of a cross-reference to "a crime of violence as defined in section 9714(g) (relating to sentences for second and subsequent offenses)," which then provided [13] as follows:

> **(g) Definition.**—As used in this section, the term "crime of violence" means murder of the third degree, voluntary manslaughter, aggravated assault as defined in 18 Pa.C.S. § 2702(a)(1) or (2) (relating to aggravated assault), rape, involuntary deviate sexual intercourse, arson as defined in 18 Pa.C.S. § 3301(a) (relating to arson and related offenses), kidnapping, burglary of a structure adapted for overnight accommodation in which at the time of the offense any person is present, robbery as defined in 18 Pa.C.S. § 3701(a)(1)(i), (ii) or (iii) (relating to robbery), or robbery of a motor vehicle, or criminal attempt, criminal conspiracy or criminal solicitation to commit murder or any of the above

**13.** Section 9714(g) was again amended in 2000 to add "aggravated indecent assault, incest, [and] sexual assault" to the enumerated crimes of violence. *See* Act of May 10, 2000, Pub.L. 74, No. 18, § 2.

offenses listed above, or an equivalent crime under the laws of this Commonwealth in effect at the time of the commission of that offense, or an equivalent crime in another jurisdiction.

42 Pa.C.S. § 9714(g) (reflecting the language of the subsection until the 2000 amendment took effect sixty days after May 10, 2000). Thus, the amendment cross-referencing § 9714(g) in effect extended the body of crimes to which § 9712 applied to include arson-related crimes, burglary of a structure, robbery of a motor vehicle, and also added crimes of attempt, conspiracy, or solicitation pertaining to the enumerated offenses.

The Commonwealth argues, in principal, that the legislature's addition of "solicitation" to the applicable definition of "crime of violence" signifies the legislature's intent to accept the Superior Court's interpretation of § 9712(a) to apply to unarmed co-conspirators as well as the party or parties who visibly possessed firearms during the commission of the underlying crime. It argues that because sometimes a party guilty of solicitation to commit a crime will not be present at the scene, the legislature must have intended that even a co-conspirator not present during the commission of the offense might incur the mandatory minimum sentence where his cohort brandished a firearm during the commission of the underlying crime. That one soliciting a criminal act often will not be present at the scene of the crime, however, does not preclude such a party from actively participating in the crime. One might posit, for example, one person hiring another to assist him in the active commission of a crime. The same is true of the other categories of defendants included in the 1995 amendments to the definition of "crime of violence." Thus, nothing in these newly added qualifying offenses requires us to conclude that the legislature intended to ratify existing precedent.

Indeed, one might just as readily conclude that those additions militate in favor of a contrary conclusion. If the legislature intended to accede to existing caselaw expanding § 9712 to apply beyond its terms to parties who themselves did not visibly possess firearms during the commission of the offense,

its addition of co-conspirators to the definition would be redundant, as Superior Court precedent already provided for application of the mandatory minimum to unarmed co-conspirators. To the extent this connotation creates uncertainty regarding the legislature's intent, we are bound by 1 Pa.C.S. § 1928 and *Wooten* to construe § 9712 strictly in favor of the defendant. Nor does this reading render the new categories of offenders added to the definition furnished by § 9714(g) gratuitous or ineffective. *See* 1 Pa.C.S. § 1922(2). By its terms, the § 9714(g) definition is applicable to its use "in this section." A review of the balance of § 9714, which provides various mandatory sentences for repeat offenders, reveals that the term "crime of violence" is used repeatedly therein in ways that do not bear on § 9712. Moreover, had the legislature intended to modify the definition of "crime of violence" expressly for purposes of § 9712, it seems unlikely that it would have done so by burying the amendment in another, largely unrelated section, instead of merely modifying the definition that had until then been contained within § 9712 itself. Nothing in the 1995 amendments suggests that we should not read § 9712 by its plain terms to require *both* that the offense in question constitute a crime of violence (as defined in § 9714(g)) *and* that the particular offender in question have visibly possessed a firearm to incur the mandatory minimum.

Further supporting these observations, Appellant notes that the legislature, in enacting § 9712.1, signaled its ability expressly to distinguish an armed party to a crime from his unarmed co-conspirator as follows:

(a) **Mandatory sentence.**—Any person who is convicted of a [predicate drug-related offense], when at the time of the offense the person **or the person's accomplice** is in physical possession or control of a firearm, whether visible, concealed about the person or the person's accomplice or within the actor's or accomplice's reach or in close proximity to the controlled substance, shall likewise be sentenced to a minimum sentence of at least five years of total confinement.

42 Pa.C.S. § 9712.1 (emphasis added). Appellant directs us to our decision in *Commonwealth v. Bigelow,* 484 Pa. 476, 399 A.2d 392 (1979), in support of the proposition that where one section of a statute contains particular language, the exclusion of that language in another section of the statute suggests a difference of legislative intent. *See id.* at 395 ("Where a section of a statute contains a given provision, the omission of such provision from a similar (section) is significant to show a different intention existed." (internal quotation marks omitted)). Here, Appellant argues, the legislature saw fit to expressly provide for unarmed accomplices in § 9712.1 but declined to do so with as much clarity in § 9712. Were the legislature confident of the Superior Court's analysis, § 9712.1(a), without a specific reference to accomplices, would have been sufficient to ensure application of the mandatory minimum sentence to unarmed accomplices.

The Commonwealth responds:

Unlike § 9712, ... § 9712.1 does not apply to persons convicted of conspiracy or solicitation. Moreover, it is absurd to contend that the inclusion of language in a statute enacted in 2004, more than two decades after § 9712 was first enacted and ten years after the General assembly amended § 9712 without choosing to "correct" what [Appellant] deems a longstanding "incorrect" determination of legislative intent, is more instructive of legislative intent than subsequent legislative action on the statute in question.

Brief for Commonwealth at 12 n. 5. The Commonwealth, however, indulges a certain degree of sophistry when it rejects as absurd the utility of looking to § 9712.1 to inform the meaning of relevant language in § 9712(a) while its own argument substantially relies on § 9714, a provision with a far more autonomous role in the larger statutory scheme than § 9712.1, which in effect merely expands the function of § 9712(a) into the distinct realm of drug-related crime. Without a clear basis to distinguish the relevance of the two different modifications to an existing statute, we must consider both as probative of legislative intent insofar as a lack of

clarity requires us to look outside the plain language of § 9712(a) at all.

There is, to be clear, a colorable argument that the legislature's failure to amend § 9712 to resist the effect of the Superior Court's pre–1995 holdings applying the mandatory minimum sentence to unarmed co-conspirators manifested its acquiescence to those rulings. The rules of statutory construction urge us to presume "[t]hat when a court of last resort has construed the language used in a statute, the General Assembly in subsequent statutes on the same subject matter intends the same construction to be placed upon such language." 1 Pa.C.S. § 1922(4). Moreover, notwithstanding the clear import of § 1922(4) that it applies only where this Court has furnished a construction, this Court has recognized the extension in principle of § 1922(4)'s presumption to cases decided by the Superior Court.

> It has been held, and rightly so, that where a decision of the Superior Court construing a statute was never modified by the Supreme Court, the presumption was that when the legislature subsequently enacted a similar statute dealing with the same subject matter, the legislature intended the same construction to be placed on the language of the subsequent statute.

*In re Estate of Lock,* 431 Pa. 251, 244 A.2d 677, 682–83 (1968).[14] As noted, the Superior Court has spoken often, and

14. This extension of § 1922(4) beyond its terms to encompass lines of Superior Court precedent this Court has yet to disturb would seem to hinge at least in part on the idea that our decision not to review such cases is, itself, a form of acquiescence. But as this Court's then-Justice Samuel J. Roberts once observed, "A denial [of *allocatur*] may merely reflect that the particular controversy was not the proper vehicle for deciding a question of law or that it was not presented in the proper posture." Hon. Samuel J. Roberts, *Foreword, Pennsylvania Supreme Court Review, 1980,* 54 TEMPLE L.Q. 403, 407 (1981); *cf. Commonwealth v. Tilghman,* 543 Pa. 578, 673 A.2d 898, 904 (1996) ("[A] dismissal [of a petition for allowance of appeal] as being improvidently granted has the exact same effect as if this Court had denied the petition for allowance of appeal (allocatur) in the first place. Where we dismiss an appeal as improvidently granted, the lower tribunal's opinion and order stand as a decision of that court and this Court's order has *no* precedential value." (some emphasis removed)).

with increasing unanimity, to the application of § 9712 to unarmed co-conspirators. More than once, moreover, we have denied *allocatur* on the issue now presented, which would appear to bring this case within the scenario outlined in *Lock*. *See, e.g., Commonwealth v. Walker*, 525 Pa. 618, 577 A.2d 889 (1990) (*per curiam* ), *Commonwealth v. Matos*, 575 A.2d 563 (Pa.1990) (*per curiam* ).

The question thus becomes whether our mandate to find legislative intent in the language of the statute must yield to the *Lock* presumption that the legislature declined to modify the statute in relevant ways in reliance on the then-prevailing body of law in the intermediate appellate court. It is true that in 1995, the legislature moved the description of to whom the § 9712(a) mandatory minimum sentence would apply to § 9714(g) and modified that definition to include the inchoate crimes of conspiracy and solicitation, the latter at least suggesting that one need not even be present at the commission of the crime in question to be guilty of a "crime of violence," just as the Commonwealth has observed. Nevertheless, § 9712(a) provides in unequivocal and unambiguous language that it applies to a person convicted of a crime of violence *"if the person "* visibly possessed a firearm or firearm replica during the commission of the crime. To read the language for what it appears to say neither brings any two sections of the statute into conflict nor renders any part of either section legally ineffective, in light of the fact that the § 9714(g) definition does double duty, furnishing a relevant definition for itself as well as § 9712(a). Reading these provisions together, according to their plain meaning, requires us to agree that a crime of violence occurs even in case of the solicitation by an absent party. Under § 9712(a), however, unless that soliciting party "visibly possesses" a firearm or

By contrast, Mr. Justice Castille would find meaning in the "dozens of additional cases" it posits in which "Superior Court panels rejected Section 9712 claims in unpublished memorandum decisions applying *Williams,* and where allocatur was sought and review denied by this Court." Diss. Op. of Justice Castille at 391 n. 1, 918 A.2d at 111 n. 1. It is precisely to avoid the temptation of this sort of conjecture that this Court, at every turn, has declined to confer *stare decisis* effect upon its *per curiam* orders.

firearm replica "during the commission of the crime" he does not fall within the class of offenders to which § 9712(a) applies.[15]

That we have declined, until now, to address the Superior Court's decisions on this issue, while perhaps regrettable, cannot be used as a brickbat to prevent us from bringing the decisional law of this Commonwealth into line with the plain language of § 9712(a). The legislature has proved time and again—in its deadly weapon sentence enhancement, in § 9712.1—that it recognizes the value of expressly providing that a mandatory minimum sentence hinging on possession (§ 9712.1) or visible possession (§ 9712) of a firearm applies or does not apply to an unarmed co-conspirator. While that body is, of course, free to do so, it is not the place of this Court to shoulder that burden in its place.

## IV. Conclusion

 For all the foregoing reasons, and in light of the unambiguous language of 42 Pa.C.S. § 9712(a), we hold that

15. Mr. Chief Justice Cappy raises valid concerns regarding the soundness of our decision in *Lock*. That we acknowledge those concerns as valid, however, does not mean, as Mr. Justice Castille assumes, that we believe *Lock* was wrongly decided. Our disposition of this case, rather, does not depend on resolving these concerns, as it hinges solely on the plain language of §§ 9712(a) and 9714(g). As noted, where the plain language of a statutory provision clearly signals legislative intent, we do not disregard that language in pursuit of its spirit. 1 Pa.C.S. § 1921(b). We have addressed the parties' arguments from extra-textual indicia of legislative intent only to reject them as failing to demonstrate any reason to depart from the plain language of the relevant provisions. Moreover, because we find the statutory language conclusive of legislative intent, we need not reach questions concerning the effect of 1 Pa.C.S. § 1922(4) and the meaning and validity of our decision in *Lock*, because § 1922(4) and *Lock* speak to one of several means by which we discern legislative intent when the language in question is less than conclusive. We find it ill-advised, generally, to consider substantial questions not squarely presented and fully argued by the parties below and before this Court. *See Commonwealth v. Mitchell*, 588 Pa. 19, 902 A.2d 430 (2006). Although the Commonwealth argues in its Brief for Appellee that *Lock* dictates our affirmance in this case, neither the Commonwealth nor Appellant in his Reply Brief argues that *Lock* be abrogated. Denied the benefit of argument on this question, and finding *Lock* inapplicable in any event, we choose not to reach outside the ambit of our review in this case to upset a case of considerable vintage.

the mandatory minimum sentence provided by that section applies only to those parties culpable for a crime of violence as defined by 42 Pa.C.S. § 9714(g) who visibly possess a firearm or firearm replica during the commission of the crime. Thus, unarmed co-conspirators do not fall within the ambit of § 9712(a). The Superior Court's contrary order is reversed and the case remanded for proceedings consistent with this Opinion.

Former Justices NIGRO and NEWMAN did not participate in the decision of this case.

Justice SAYLOR joins the opinion.

Chief Justice CAPPY files a concurring opinion.

Justice CASTILLE files a dissenting opinion.

Justice EAKIN files a dissenting opinion in which Justice CASTILLE joins.

Chief Justice CAPPY, concurring.

I join the majority opinion, save for its analysis of Section 1922(4) of the Statutory Construction Act and its treatment of our decision in *Estate of Lock*, 431 Pa. 251, 244 A.2d 677 (1968). I agree with the Majority's strong suggestion that *Estate of Lock* is at odds with the plain language of the Statutory Construction Act and a modern understanding of the import of our denial of allocatur; moreover, I also find that it is contrary to our established standard of review regarding matters of statutory interpretation. Indeed, the continued viability of our nearly-half-century-old decision in *Estate of Lock* has been questioned by our Court before. *See Pelton v. Commonwealth, Department of Public Welfare*, 514 Pa. 323, 523 A.2d 1104, 1109 n. 4 (1987). Therefore, rather than continue to equivocate, for the reasons stated below, I believe that it is time to prune this unfortunate offshoot from our statutory construction jurisprudence and overrule our prior decision in *Estate of Lock*.

The rule of statutory construction found at 1 Pa.C.S. § 1922(4) instructs "That when a court of last resort has construed the language used in a statute, the General Assembly in subsequent statutes on the same subject matter intends the same construction to be placed upon such language." Breaking with prior case law,[1] our Court in its 1968 decision in *Estate of Lock* expressly extended this rule and opined that where a decision of the *Superior Court* construing a statute has not been modified by the Pennsylvania Supreme Court, there is a presumption that the subsequent enactment of a similar statute dealing with the same subject matter is intended to carry the same construction as that given by the Superior Court. *Estate of Lock*, 244 A.2d at 682–83.

In its discussion of whether the sentencing enhancement found at 42 Pa.C.S. § 9712 applies to an unarmed co-conspirator to the underlying crime, the Majority necessarily considers this presumption. The Majority notes that because the Superior Court has interpreted Section 9712 and we have thereafter denied allocatur on this issue, coupled with the fact that the Legislature has since revisited this statute and failed to amend Section 9712, that pursuant to *Estate of Lock*, the presumption arises. Majority Opinion at 385, 918 A.2d at 108.

The Majority attempts to surmount the presumption by suggesting that the Court's "mandate to find legislative intent" must not yield to the *Estate of Lock* presumption. Majority Opinion at 385, 918 A.2d at 108. The Majority continues upon a plain language approach to statutory interpretation and concludes that the Superior Court's prior decisions "cannot be used as a brickbat to prevent us from bringing the decisional law of this Commonwealth into line with the plain language of § 9712(a)." Majority Opinion at

1. *See, e.g., Parisi v. Philadelphia Zoning Board of Adjustment,* 393 Pa. 458, 143 A.2d 360, 363 (1958); *Salvation Army Case,* 349 Pa. 105, 36 A.2d 479, 481 (1944); *Buhl's Estate,* 300 Pa. 29, 150 A. 86, 87 (1930); *Bell v. Bell,* 287 Pa. 269, 135 A. 219, 220 (1926). Although *DuPuy's Estate,* 373 Pa. 423, 96 A.2d 318, 320 (1953), implicitly suggests a presumption based upon Superior Court precedent, it was not until our decision in *Estate of Lock* that a presumption based upon intermediate appellate court case law was made clear.

386, 918 A.2d at 108. Yet, if a simple re-interpretation of the statute by our Court overcomes the presumptive power of the intermediate appellate court's interpretation, it can hardly be considered a presumption at all.

Instead of engaging in the exercise of what our Court would require of itself by way of a burden to rebut the presumption created by the Superior Court's interpretation of a statute, I believe that the presumption based upon *Superior Court* case law as articulated in *Estate of Lock* is itself what is faulty and should be repudiated.

First, *Estate of Lock* is in direct contravention of the plain language of the Statutory Construction Act. Section 1922(4) of the Act focuses on an interpretation of a statute by the "court of last resort." There is no question that the Superior Court is not the "court of last resort" in Pennsylvania-it is the Supreme Court of Pennsylvania. *See, e.g., Commonwealth v. Wallace,* 582 Pa. 234, 870 A.2d 838, 842 (2005) (differentiating between an intermediate appellate court and a court of last resort); *Warehime v. Warehime,* 580 Pa. 201, 860 A.2d 41, 48 (2004) (noting as no federal issues involved in the appeal, the Pennsylvania Supreme Court was the court of last resort). Thus, the standard articulated in *Estate of Lock* cannot withstand even cursory scrutiny with respect to the language employed by the Legislature itself.

Second, *Estate of Lock's* presumption regarding legislative intent hinges on the existence of an intermediate court decision which has not been modified by our Court. As noted by the Majority, this approach fails to appreciate that our denial of allocatur of an intermediate court decision is not an endorsement of or rejection of the intermediate appellate court's decision. Majority Opinion at 384–85 fn.14, 918 A.2d at 108 fn.14; *see also Commonwealth v. Tarver,* 493 Pa. 320, 426 A.2d 569, 574 (1981) (opining that the denial of allocatur is not a ruling on the merits). Yet, under *Estate of Lock,* our denial of allocatur gives birth to the presumption, thereby giving our denial of allocatur unintended significance.

Finally, and perhaps most importantly, the continued use of *Estate of Lock* as a guide to statutory interpretation would

diminish, at least to some extent, this Court's power to interpret a legislative enactment and to freely reject an intermediate appellate court's interpretation of a statute. This limitation on review is inconsistent not only with the structure of our Unitary Judicial System, which places the Supreme Court at its head, but also with our long-established standard of review concerning matters of statutory interpretation—de novo review. To give the intermediate appellate court's prior interpretation presumptive value, would be to give greater deference to that lower intermediate appellate court's prior decision than it is entitled to under de novo review.

For the reasons stated above, I would overrule *Estate of Lock*, and conform again our statutory construction jurisprudence to the clear terms of Section 1922(4) from which it deviated, and thus, confine the presumptive intent of the Legislature to statutory interpretations by the "court of last resort" which is, the Pennsylvania Supreme Court.[2, 3]

**2.** While I do not lightly condone the overruling of our prior precedent, *see, e.g., Grimaud v. Commonwealth,* 581 Pa. 398, 865 A.2d 835, 849 n. 2 (2005) (Cappy, J. dissenting), when a decision of considerable vintage is shown through the consequences of application to be wrongly decided, such that the reason for the rule no longer exists, I see no basis on which to perpetuate such decisional law.

**3.** The Majority offers that while it is deciding this appeal "solely on the plain language" of the relevant statutes, it nevertheless believes itself compelled to address other arguments regarding the intent of the Legislature and in doing so, speaks to import of *Estate of Lock.* In seemingly contradictory fashion, the Majority characterizes its discussion regarding *Estate of Lock* as *obiter dicta,* "we need not reach questions concerning . . . the meaning and validity of our decision in *Lock* . . . ," Majority Opinion at 386 fn. 15, 918 A.2d at 108 fn. 15, yet on the other hand, continues to believe it to be necessary to the resolution of the appeal-"[t]he question thus becomes whether our mandate to find legislative intent in the language of the statute must yield to the *Lock* presumption. . . ." Majority Opinion at 385, 918 A.2d at 108. Yet, if the presumption of Section 1922(4), as interpreted by *Estate of Lock* exists, then it is a necessary component of the statutory construction analysis in this appeal. Simply stated, *Estate of Lock* is "in play" in this appeal whether a plain language construction is utilized by the Majority or not. Finally, and perhaps most importantly, regardless of the reason articulated by the Majority for raising and addressing *Estate of Lock,* by applying that decision and the dubious presumption contained therein, the Majority has expressly given *Estate of Lock* continued viability and validity. With this I cannot agree.

Justice CASTILLE, dissenting.

I join the Dissenting Opinion by Mr. Justice Eakin, as I agree that the issue upon which the Majority grants relief obviously was waived.[1] I dissent separately to address the merits of the issue the Majority reaches out to decide.

The Court today disapproves twenty years of Superior Court precedent construing 42 Pa.C.S. § 9712, precedent which became the governing construction of the statute when this Court elected not to exercise review soon after it came into existence (notwithstanding that a panel of the Superior Court had immediately questioned the wisdom of the precedent), or in the years since, precedent which the Superior Court has consistently applied, and precedent which the General Assembly did not seek to undo by modifying the statute in question. I respectfully dissent.

I recognize that this Court, in recent years, has undertaken to modify traditional notions of vicarious liability, thereby narrowing the exposure a criminal defendant faces when charged as an accomplice or conspirator. *See generally Commonwealth v. Hannibal,* 562 Pa. 132, 753 A.2d 1265, 1273–76 (2000) (Castille, J., concurring). When the Superior Court first encountered the statute at issue here in 1986, however, I

1. Furthermore, I note that "declining to resist" a "trial court's unequivocal effort to cut off conversation" is not a valid reason for failure to press, or to make clear, the specific contours of an objection. Majority Op. at 372, 918 A.2d at 100. As I recently noted in *Commonwealth v. Pressley,* 584 Pa. 624, 887 A.2d 220, 227 n. 1 (2005) (Castille, J., concurring in the result), "I respectfully disagree with [any] suggestion ... that a repeated objection risks 'alienating' the trial judge. It should not alienate a trial judge that a lawyer seeks to protect his client's interest; and I trust in the professionalism of our trial judges to recognize what is an exercise of prudent caution and not to react adversely thereto." In this case, the failure was not one of nonrepetition; rather, appellant simply never forwarded the relevant objection. A proper objection could easily and candidly have been phrased thus: "Your Honor, I concede (as is my duty) that the law at the Superior Court level (which binds you), is settled, is against me, and affords you no discretion but to impose the statutory mandatory minimum sentence. Respectfully, however, I wish to register an objection to the application of the mandatory minimum against my client, who was but an unarmed co-conspirator, so as to preserve that issue in the hope that, upon further review, I can convince our Supreme Court to rule upon the issue, which it has not expressly done to date."

believe that the decision rendered was fully in accord with then-settled notions of the extent of vicarious liability. Indeed, I would not be at all surprised if that fact played a part in this Court's decision not to review the Superior Court's construction in the ensuing score of years.[2] While I certainly do not deem this Court's repeated denial of review dispositive of the question of statutory interpretation, neither would I deem it insignificant.

In addition to the fact that I am not convinced that the reading of the statute by the panel in *Commonwealth v. Williams*, 353 Pa.Super. 312, 509 A.2d 1292 (1986) was clearly erroneous in light of then-prevailing principles of vicarious liability, there is the fact, ably detailed in the Majority Opinion, that the General Assembly, which has since revisited the statute, has not undertaken to modify it in response to the then prevailing interpretation. This development is significant for two reasons. First, as both the Majority Opinion and the Concurring Opinion of the Chief Justice note, this Court's decision in *In re Estate of Lock*, 431 Pa. 251, 244 A.2d 677 (1968), supports the proposition that a presumption arises in such circumstances that the General Assembly is satisfied with the construction.[3]

Second, irrespective of any principle of construction or presumption, in the *Lock* era, the General Assembly has

**2.** The Majority notes two instances where this Court denied allocatur in cases where published decisions of the Superior Court applied *Commonwealth v. Williams*, 353 Pa.Super. 312, 509 A.2d 1292 (1986). *See Commonwealth v. Walker*, 525 Pa. 618, 577 A.2d 889 (1990) (*per curiam*); *Commonwealth v. Matos*, 575 A.2d 563 (Pa.1990) (*per curiam*). Given the frequency with which Section 9712 is applied throughout the Commonwealth, and that application of *Williams* to a Section 9712 challenge by an unarmed conspirator would not break new ground, it is safe to estimate that there have been dozens of additional cases where Superior Court panels rejected Section 9712 claims in unpublished memorandum decisions applying *Williams*, and where allocatur was sought and review denied by this Court.

**3.** I am inclined to agree with both the Majority Opinion and the Chief Justice that *Lock* was wrongly decided, since the Superior Court most certainly is not a court of last resort. But, whether *Lock* was right or wrong in some absolute sense, it was the law during the ascendancy of the (unreviewed) *Williams* rule and its holding triggers the presumption of legislative agreement/acquiescence.

shown itself quite capable of responding to what it believes is a judicial misinterpretation of a statute by an intermediate appellate court. *See, e.g. Commonwealth v. Eddings,* 565 Pa. 256, 772 A.2d 956 (2001) (Castille, J., joined by Newman, J., dissenting from *per curiam* affirmance) (noting that General Assembly had already responded to and addressed and corrected the Superior Court decision at issue, which involved a statutory construction question of first impression under the "three strikes" provision of the Sentencing Code). Section 9712 is not obscure or rarely applied, nor is it rarely applied to unarmed confederates in a crime; the mandatory sentence literally is applied on a daily basis in courts throughout the Commonwealth. The General Assembly has had twenty years to undo the holding in *Williams,* if it thought it incorrect and thought that criminal confederates deserved more lenient treatment than the person who brandished the firearm. I do not believe it strained or ephemeral to conclude that the Legislature's failure to alter the statute, under these circumstances, signifies its satisfaction with the prevailing construction. Accordingly, I would not recast the jurisprudence today, but instead would leave any amendment to the judgment of the General Assembly.[4]

Justice EAKIN, dissenting.

I dissent because I believe Appellant waived his challenge to the application of 42 Pa.C.S. § 9712, by failing to raise the issue before the trial court.

"Issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). Appellant failed to challenge the application of § 9712 before the trial court. At sentencing, Appellant's counsel stated, "With regard to [Appellant], I did speak to my appeals unit. I would certainly have to concede the mandatory issue with one additional argument." N.T., 3/25/02, at 2. Counsel then ar-

4. As it is, of course, the General Assembly can correct the Court's interpretation today by amending the Section to read, "shall, if the person, or the person's conspirator or accomplice, visibly possessed, etc."

gued the jury convicted Appellant of conspiracy to commit theft. The court disagreed, determining the jury found Appellant guilty of conspiracy to commit robbery. *Id.*, at 3, 5. Next, Appellant's counsel argued his sentence violated *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), since the Commonwealth only had to prove § 9712 applied by a preponderance of the evidence. N.T., 3/25/02, at 3. Counsel continued:

Furthermore, your honor, applying the mandatory minimum takes away the discretion of the court to impose a lesser sentence. If there is any case that cries out for a lesser sentence, it would be this particular case. You heard the codefendant testify in this matter and the court was aware of the discusting [sic] behavior of the codefendant throughout the trial. The jury clearly found my client not guilty of robbery. They found him guilty of conspiracy and I would submit that we have an inconsistency argument for a motion for acquittal.

[Appellant] is not a threat to society, your honor. This is not a gentleman who needs the mandatory minimum applied to him. As I said, when you apply the mandatory, you take away the court's discretion and you, yourself, recognize the clear difference of my client's behavior throughout the trial process, as well as the abhorrent behavior of the codefendant. That, itself, would deviate from applying the mandatory and sentencing my client to a—

*Id.*, at 3–4. The court interrupted Appellant's argument, stating, "I think case law is supportive of the Commonwealth's position. I have no discretion." *Id.*, at 5.

Appellant failed to argue § 9712 cannot apply to him because he was not armed. Rather, Appellant argued the court should not apply the mandatory minimum since he is not a threat to society, and because of the difference in Appellant's and his co-defendant's behavior during trial. Appellant urged the court exercise leniency by not applying the sentencing enhancement; he did not assert the enhancement did not apply because he did not possess a firearm during the commis-

sion of the underlying crime.[1] Thus, Appellant has waived the challenge he currently raises, unless an exception to waiver exists.

"[C]laims concerning the illegality of the sentence are not waivable." *Commonwealth v. Vasquez,* 560 Pa. 381, 744 A.2d 1280, 1284 (2000) (citations omitted). Generally, an illegal sentence is one that exceeds the statutory limits. *Commonwealth v. Bradley,* 575 Pa. 141, 834 A.2d 1127, 1131 (2003) ("An illegal sentence is one that exceeds the statutory limits."); *Vasquez,* at 1284 ("If a sentence is within the statutory limits, it is legal."). Appellant's sentence is within the statutory limits—Appellant was sentenced to five to 10 years imprisonment, which is well within the 20–year statutory maximum for his first degree felony conviction for conspiracy to rob. 18 Pa.C.S. § 1103(1).

I, like the majority, recognize the uncertainty regarding what challenges implicate sentence legality. Majority Op., at 370–71, 918 A.2d at 98–99 (citing *McCray v. Pennsylvania Department of Corrections,* 582 Pa. 440, 872 A.2d 1127, 1138 (2005) (Saylor, J., concurring)). Since Appellant's claim does not implicate the legality of his sentence, and he failed to raise it before the trial court, I would hold Appellant's claim waived and would not reach a discussion of its merits.

Justice CASTILLE joins this dissenting opinion.

---

1. The majority suggests finding Appellant's challenge to the application of § 9712 waived would "punish counsel for declining to resist the trial court's unequivocal effort to cut off conversation on this point." Majority Op., at 372, 918 A.2d at 100. I disagree. Counsel began her argument by *conceding* the mandatory issue "with one additional argument"—she made that argument, which was not remotely close to the issue raised here. Counsel argued the court should exercise leniency; she did not argue § 9712 did not apply. Counsel simply failed to raise the issue asserted here, and the failure to do so constitutes waiver.